SEELYE & BROWN *v.* JOURNAL CO. OF TROY.

1. BROKERS—COMMISSIONS—CONTRACTS—RIGHT TO RECOVER.
   In an action upon a contract for a commission claimed to be due for services rendered in helping to secure a certain advertising contract, where it was contemplated that the parties would co-operate together in securing such contracts, testimony that plaintiff's employee co-

For discussion of the question of future promises as fraud, see notes in 10 L. R. A. (N. S.) 640; 24 L. R. A. (N. S.) 735.
224—Mich.—31.

operated with defendant in securing the contract in question and did all that he was requested to do, *held*, to justify an instruction that if such were found to be the facts plaintiff was entitled to recover.

2. TRIAL—COUNTS—TORTS—FRAUD—INSTRUCTIONS.

Where a count in tort was added to the declaration, but there was nothing in the case which would support such count, because the controversy grew out of a contract, the trial court was in error in refusing a request to charge that no fraud was alleged or shown.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted June 13, 1923. (Docket No. 13.) Decided October 1, 1923.

Assumpsit by Seelye & Brown, Inc., against the Journal Company of Troy and others for commissions on the sale of certain advertising. Judgment for plaintiff. Defendants bring error. Reversed.

*Havelock J. Northmore* (*Keena, Lightner, Oxtoby & Hanley,* of counsel), for appellants.

*Thomas F. Murphy,* for appellee.

BIRD, J. Plaintiff is engaged in conducting a general advertising agency in the city of Detroit. Defendant is engaged in the business of building up dealers' organizations to aid manufacturers of automobiles in disposing of their product. On the 27th day of June, 1918, defendant addressed the following letter to plaintiff:

June twenty-seventh, 1918.
"WARREN SEELYE ADVERTISING
   COMPANY,
   "801 Kresge Building,
      "Detroit, Michigan.
   "*Gentlemen:* Confirming our verbal agreement, it is understood that you are to undertake the sale of The

Service Corporation service under the following arrangement:

"Upon the business of the concerns whose advertising you are now handling and those concerns whose advertising is secured during the life of any contract that you make for us or in connection with this, we will pay you 15 per cent. upon the face of the contract as a commission for your services in securing these contracts.

"Upon the business of any concerns whose advertising you are not handling, and do not secure during the life of any contract that you may secure for us, we will pay you 20 per cent. commission on the face of the contract. These commissions are due and payable according to the terms of our contract with the advertiser.

"It is understood that the men of your organization, particularly Mr. Brotherton and Mr. Seelye, are to devote their best efforts to promoting the sale of our service and in addition to this, you will help us in the outlining of any plans or preparation of literature, and assist us in writing of the copy if necessary, for any of the above literature which may be used in the completion of these campaigns. We also understand (as per Mr. Seelye's verbal statement in this office) that you will be willing, if called upon, to write the entire copy for a given campaign when, for good business reasons, we are unable to do so.

"We agree to advance you the sum of $100 each week, payable weekly, which is to be deducted from the commissions earned by you as mentioned above.

"It is understood that all traveling expenses on trips which you make in connection with our business, shall be advanced by us, and deducted from subsequent commissions.

"We would also suggest that, in order to avoid confusion as to priority of claims upon any client, you will furnish us with a written memorandum indicating each instance where you have started selling negotiations. and we will also do the same.

"This agreement is to continue in effect for a period of one year, unless notice of cancellation is presented sixty days in advance by either party to the other, in writing.

"This proposal is made out in duplicate and your acceptance will constitute it a formal agreement between us.

"Trusting that this will work out to the best advantage of all concerned, we are,

"Yours very truly,

(Signed) "THE SERVICE CORPORATION,

"C. C. CONANT, President.

CCC/HD.

"Accepted:

WARREN SEELYE ADVERTISING CO.,

W. O. SEELYE (President)."

Soon after this agreement was executed it is the claim of plaintiff that Mr. Brotherton, an employee of plaintiff, went to Chicago with Mr. Conant, president of the defendant company, at his request, to aid him in securing a contract from the Diamond T Motor Car Company. That Mr. Conant directed Mr. Brotherton to call upon the officials of the motor car company and obtain certain data as to its business and arrange for an interview with him at his hotel; that Mr. Brotherton carried out these instructions and other things which he was requested to do, and after he had arranged for the interview Mr. Conant advised Mr. Brotherton that he had done all he could, and that he might as well return to Detroit. Following this arrangement the interview was had by Mr. Conant with the motor car people and the contract for advertising secured. Subsequently it was carried out and the sum of $28,400 was realized therefrom. When plaintiff learned the contract was concluded it demanded 20 per cent. of the amount realized. This demand was refused and this suit followed, with the result that the jury rendered a verdict for plaintiff for the 20 per cent. stipulated in the contract, or $5,680.

Defendant raises the question that plaintiff did not show that it performed services which entitled it to a

commission of 20 per cent. on the Diamond T Motor Car contract.    It was defendant's theory that

"the contract contemplates that before plaintiff is entitled to compensation it must be the active procuring cause in having brought the Diamond Company, through its officers, to a frame of mind where they were ready to enter into a formal contract with the Journal Company.    To have found a person who is able to contract, but who is not willing, would not be sufficient to comply with the terms of the agreement of June 27th."

It was plaintiff's contention, in short, that Mr. Brotherton went to Chicago with Mr. Conant, and at his suggestion, and did what he was requested to do, and was willing thereafter to do anything further in the premises which he could to secure the contract. The trial court took plaintiff's view of the matter and instructed the jury that:

"If you find, under the testimony of this case, that such a contract is in existence, and that is admitted; and that Mr. Conant requested Mr. Brotherton to go to Chicago with him for this purpose; that at the solicitation of Mr. Conant Mr. Brotherton did call upon the Diamond T corporation; that he procured knowledge ·or information that Mr. Conant required him to secure for him, of that corporation; that he later reported that to Mr. Conant at the hotel; that then Mr. Conant told him he could return to his home in the city of Detroit, and that he would attend to the rest of the transaction; that the plaintiff had at all times been ready and willing to render such services as the defendant in the case would thereafter require of them, and that it was because of the conduct of the defendant that no further services were rendered, then I say to you that the plaintiff in this case would be entitled to recover, and you should so find by your verdict, if you find those facts to exist under the testimony in this case."

1. We think the trial court took the right view of the contract.    We cannot agree with defendant that

before plaintiff was entitled to compensation it would have to be shown that it was the active procuring cause in having brought the motor car company to the point where it was willing to enter into a contract with defendant.    Counsel base this argument on the word "secure" used in the contract.    In view of the entire letter and testimony as to defendant's methods of soliciting business we think this construction is too narrow.    The agreement bound plaintiff: (a) To contribute the service of Mr. Brotherton and Mr. Seelye, and provided that they should devote their best efforts to procuring the sale of defendant's product. (b) To assist in the outline of any plans or preparation of literature for campaign. (c) To assist in the preparation of copy, if necessary, of any literature to be used in the campaign. (d) If called upon, to prepare all the literature for a campaign.

These provisions contemplate co-operation rather than sole initiative on the part of plaintiff.    They suggested, at least, that plaintiff shall follow rather than lead in the work to be done.    It appeared that the business of soliciting contracts was rather distasteful to Mr. Conant.    As he termed it, he "could not ring door bells."    What he desired was someone to go in advance of him and set the stage and then he would come along with his two trunks of exhibits, which were used to influence the prospective customer to close a contract.    The method of securing contracts contemplated the use of these two trunks of exhibits. There was no agreement that plaintiff should take charge of the trunks, and if it did, it would not know how to use their contents.    This also suggests co-operation rather than independent action.    We think the trial court was right in submitting the question to the jury.

2. Plaintiff added a count in tort to his declaration based upon the fraud of defendant.    It is claimed

that certain testimony was produced which supports it.  Plaintiff states his theory in this respect in the following manner:

"The theory of plaintiff's case and the allegations embrace a condition which might have been entirely free from any sinister or ulterior motive on the part of defendant up to a time when it decided not to give commissions claimed to be due to plaintiff.  In other words, the inducement to the execution of the contract, and the execution of the contract itself, might have been entirely free from any fraudulent element; but the subsequent actions of the defendant, namely, the refusal of the defendant to recognize plaintiff's right to commissions, after doing exactly what they were told to do by defendant, were actions to give to the inducements the character of falsity or misrepresentations."

Notwithstanding defendant protested, the trial court submitted the case upon the count in tort as well as upon the one in assumpsit.  So far as we have examined the record or had it called to our attention we see nothing in the case which would support a count in tort.  The difficulties here grew out of a contract.  There is no dispute but what the contract was made.  Under that contract plaintiff claims pay for certain services which it rendered.  Defendant replies that plaintiff is not entitled to pay under the terms of the contract—simply a disagreement over written promises.  Plaintiff has shown no deception nor misrepresentation upon the part of defendant which would amount to fraud.  Because defendant promised it would do a certain thing in the future, and then afterwards refused to do it, does not constitute fraud.  There was no wrong independent of contract alleged, neither was any proven.  There was no basis in the dealings of the parties to support such a claim.  Defendant requested the court to charge that no fraud was alleged or shown.  This was re-

fused.    We think the refusal of the court was reversible error.

The remaining questions will not be considered as they are not likely to arise upon a re-trial.

The judgment will be reversed and a new trial granted.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.