STANDARD OIL CO. OF NEW JERSEY v. CITY OF CHARLOTTESVILLE et al.

No. 2920.

Circuit Court of Appeals, Fourth Circuit.
June 14, 1930.

Homan W. Walsh and Lyttleton Waddell, both of Charlottesville, Va. (Rowland K. Adams, of Baltimore, Md., and C. W. Allen, of Charlottesville, Va., on the brief), for appellant.

John S. Graves and John S. Battle, both of Charlottesville, Va., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

PARKER, Circuit Judge.

This is an appeal from a decree denying an injunction. The suit was instituted by the Standard Oil Company of New Jersey against the city of Charlottesville, Va., its mayor and commonwealth's attorney, to enjoin the enforcement of an ordinance which forbade the operation of a gasoline filling station which it was engaged in erecting in that city. The ordinance was attacked on the ground that it was unreasonable and therefore void, and also on the ground that it was violative of the provisions of the Fourteenth Amendment to the Constitution of the United States. The District Judge held the ordinance valid, denied the injunction, and dismissed the bill; and complainant has appealed.

On December 2, 1927, complainant entered into a contract to purchase a lot in the city of Charlottesville at the corner of Ninth and High streets, on condition that a permit could be obtained for the erection of a filling station thereon. On December 5th the company was advised by the mayor that there was no ordinance prohibiting the erection of such filling station, and on the same date a permit to erect same was issued to the then owner of the lot. On December 12th permits were granted to install four 550-gallon underground tanks and four pumps and to construct driveways across the sidewalks on Ninth and High streets. Thereafter complainant completed the purchase of the property, removed a brick dwelling situate thereon, and began the erection of a filling station. On June 4, 1928, certain citizens presented to the city council a petition requesting that the permits for the erection of the filling station be revoked;

and a special meeting was held on June 8th to consider the matter. A large number of citizens were present at this meeting and protested against allowing this filling station to be erected ·in the residential section of the city. As a result of the discussion had, the following ordinance was adopted:

"An ordinance to direct the location of buildings for· storing explosives and combustible substances, and to prevent the sale of kerosene, gasoline, benzine, and naptha in residence sections, in the fire limits, and congested· fire limits of the City of Charlottesville, as defined in existing ordinances;

"Be it ordained by the council of the City of Charlottesville that it shall be unlawful within the area of Charlottesville known as fire limits and congested fire limits of the City of Charlottesville as described in existing ordinances, to store for sale, keep for sale, or sell upon any lot within 100 feet of any building used solely for residence purposes, dynamite, kerosene, gasoline or naptha. This ordinance shall·not be applied to building in or lots upon which tanks are now installed.

"Any violation of any of the provisions of this ordinance shall be punished by a fine of not less than $10.00, nor more than $100.-00, for each offense. Each day such violation continues shall constitute a separate offense."

At this meeting resolutions were passed revoking the permit to install tanks and the permit to construct a driveway on Ninth street; and in addition a resolution was passed, reciting that zoning of the city was in progress and providing that "no permit for· the construction or operation of any gasoline filling station be issued from this date until the general zoning ordinance shall become ·effective."

The lot of complainants, although in a residential section, was within the "fire limits and congested fire limits" of the city. Other filling stations were being operated within such limits; and in one not being operated tanks had just been installed so that it came within the exception of the ordinance. Gasoline was being sold at thirty-seven places within the city; and in twenty-six of these the lots on which it was sold were within 100 feet of "one or more buildings used solely for residence purposes." In twenty-three cases the tanks and pumps themselves were within 100 feet of such buildings. It was shown by uncontroverted evidence that a filling station does not increase the risk of fire to nearby buildings, and that there is no danger of explosion when gasoline is stored in the manner contemplated under the permits.

The evidence shows that the lot in question is within 100 feet of buildings used solely for residential purposes, and that such buildings are so scattered over the city that no lot is available for a filling station which would not be within 100 feet of some one of them, except business property which could be bought only at prohibitive prices.

This suit was instituted to enjoin the city, its mayor and the commonwealth's attorney, from enforcing against complainant the penal provisions of the ordinance above quoted; the jurisdiction of the court being invoked both on the ground of diversity of citizenship and because relief was asked under the Constitution of the United States.

It should be noted in the outset that the ordinance in question not only does not purport to be a zoning ordinance, but also that it does not comply with the zoning statute of Virginia and consequently cannot be upheld under the principles laid down in such cases as Euclid v. Ambler Realty Co., 272. U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074, or Gorieb v. Fox, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210. The zoning statute of Virginia, Acts 1926, p. 345, provides that:

" * * * The council * * * may, by ordinance, divide the area of the city or town into one or more districts of such shape and area as may be deemed best suited to carry out the purposes of this act, and in such district or districts may establish * * * the trade, industry, residence and other specific uses of the premises in such district or districts." Section 1.

But it is further provided·by this act that:

"In order to avail itself of the powers conferred by this act the hustings or corporation court shall appoint a commission * * * to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein." Section 6.

In this case steps had been taken toward the zoning of the city, but there had been no report by the zoning commission; and, in the absence of such report, the council had no power to pass a zoning ordinance. It certainly had no power to pass a substitute for a zoning ordinance in face of the express provision of the statute governing the matter. Reimer v. Dallas (N. J. Sup.) 129 A. 390,

392; Paffendorf v. Lyndhurst Tp., 129 A. 389, 390, 1 N. J. Misc. R. 289. As said in the case last cited:

"We do not think that the respondents had any lawful right, before a zoning ordinance was in force, to, by resolution, practically put in force a zoning ordinance not existing. * * * The effect of the resolution was to apply a rule which it was intended to establish by a future ordinance, and if this could be done there was no need of the zoning ordinance, for the erection of any building could be arbitrarily prevented by resolution."

In the case of Reimer v. Dallas, supra, which forbade the erection of a garage within 150 feet of a dwelling, the court said:

"It also seems to me that the ordinance is merely a subterfuge for a zoning ordinance. There could be no more danger in erecting a garage within 150 feet of a dwelling house than within 150 feet of a school, church, library, or other premises. · The ordinance seems to me to be a substitute for a zoning ordinance and designed for the protection of residential property. Its enactment is an unreasonable exercise of the police power. A municipality cannot do by indirection that which it cannot do directly."

It is but fair to counsel for the city to say that they do not contend that the ordinance can be sustained as a zoning ordinance, and in their answer expressly disclaim this position. They contend that it should be upheld as an exercise of the police power of the city to regulate the storage and sale of gasoline and other explosives within its limits.

■ We do not think that the ordinance can be sustained as an exercise of the police power to regulate the storage and sale of gasoline, but that, considered as such, it is so manifestly unreasonable as to transcend the powers conferred upon the city in its charter and is therefore void. Where a municipal ordinance is expressly authorized by the lawmaking power of a state, its reasonableness is not a matter for the consideration of the courts, and it will be upheld unless clearly and unmistakably in violation of the constitution; but where, as here, it is enacted under general charter powers and is in contravention of the natural rights of individuals, it must not only be constitutional but reasonable as well. "The court before which it is brought must be able to see that it will tend to promote the public health, morals, safety or welfare; that the means adopted are adapted to that end, and that it is impartial in operation and not unduly oppressive upon individuals." 19 R. C. L. 805, 806; Yates v. Milwaukee, 10 Wall. 497, 19 L. Ed. 984; Bristol Door & Lumber Co. v. City of Bristol, 97 Va. 304, 33 S. E. 588, 75 Am. St. Rep. 783; Harrigan & Reid Co. v. Burton, 224 Mich. 564, 195 N. W. 60, 33 A. L. R. 142; Pacific Palisades Ass'n v. Huntington Beach, 196 Cal. 211, 237 P. 538, 40 A. L. R. 782.

The only legislative authority for the ordinance in question is a general charter provision authorizing the city by ordinance to regulate or prohibit the sale or use of combustibles and explosives, including kerosene and gasoline. That provision is contained in section 13 of the city charter and is as follows:

"They shall likewise have power to make such ordinances, by-laws, orders and regulations as it may deem desirable to carry out the following powers which are hereby vested in them: * * *

"Tenth. To direct the location of all buildings for storing gunpowder or other explosive or combustible substance; to regulate or prohibit the sale and use of dynamite, gunpowder, fire-crackers, kerosene oil, gasoline, nitro-glycerine, camphene, burning fluid, and all explosive or combustible materials, the exhibition of fire works, the discharge of firearms, the use of candles and lights in barns, stables and other buildings, the making of bonfires and the carrying of concealed weapons."

■ It is perfectly clear that an ordinance prohibiting the sale or storage for sale of gasoline (which is stored in underground tanks) on a lot within 100 feet of a residence is not one directing the location of *buildings* for storing gunpowder or other explosive or combustible material; and, if the ordinance can be sustained under this charter provision at all, it must be sustained as one regulating the sale of gasoline. As such a regulation, however, it is unreasonable in that its restrictions do not tend to the preservation of the public safety, and in that, by the exception of existing stations from its terms, it denies to complainant the equal protection of the laws and, under the circumstances of the case, grants a virtual monopoly to the owners of existing stations.

A consideration of the circumstances surrounding the adoption of the ordinance and the evidence presented to the court below shows clearly that the purpose in view in its

adoption was, not to guard against the danger of fire or explosion from the sale or storage for sale of gasoline, but to prevent the erection of this particular filling station in a residential section, because it was thought that its presence there would be offensive and would adversely affect property values. In other words, it is clear that the considerations moving the board were considerations perfectly proper in connection with the passage of a zoning ordinance but having no connection with any possible danger from fire or explosion in the operation of a filling station. The uncontradicted evidence in the case makes it clear that there was no such danger and no reason to apprehend same. As said by the Supreme Court of Kansas in Julian v. Golden Rule Oil Co., 112 Kan. 671, 212 P. 884, 885:

"Stations and stores for this purpose have become almost as numerous and common as grocery stores where gasoline was formerly kept and sold. The testimony produced tended to show that there was no greater fire hazard in such an establishment than there is where many other kinds of mercantile business is commonly carried on. Under the welfare provision of the statute, a city may exercise broad police power in protecting the public health, safety, and comfort, but to prohibit an owner of property from using it for ordinary business purposes, or for any use not in itself a nuisance, where there is no express legislative authority, is not within municipal power."

See, also, Manorville v. Flenner, 286 Pa. 103, 133 A. 30, and City of Vincennes v. Marland Refining Co. (C. C. A. 7th) 33 F.(2d) 427.

█ The ordinance shows on its face that it is not in fact one regulating or intended to regulate the sale or storage for sale of gasoline. There is no regulation as to the building to be erected or instrumentality used for that purpose. There are no provisions regulating the storage or sale. Furthermore, if there be danger of fire or explosion in the handling of gasoline, there is every reason to guard against same in congested business districts and in the neighborhood of schools, theaters, churches, hotels, and public buildings that there is in residential districts; but the ordinance does not forbid the erection of filling stations near these. And there certainly can be no reason, if the public safety is the end in view, for protecting buildings used solely for residential purposes and not buildings used partly for residential and partly for business purposes. While, of course, it is not necessary to its validity that the ordinance cover the entire field of abuses or guard against every danger to be apprehended, the fact that only dwellings used *solely* for residential purposes are specified, and that no attempt is made to protect buildings in which the public are accustomed to gather, shows very conclusively that the public safety was not the end which the ordinance had in view. Its purpose was to prevent the erection of this particular filling station in an established residential section, and its provisions are adapted to that purpose and have no reasonable relation to any danger to be apprehended from the sale or storage of gasoline. For this reason we think that it is void. A city may not, under the guise of regulating the sale of a dangerous commodity, adopt an ordinance which has no reasonable relation to that end, but which accomplishes and is intended to accomplish a purpose entirely different.

██ And we think that the ordinance is unreasonable, also, in that it exempts existing filling stations from its operation. Ordinances must be uniform, fair, and impartial in their operation. They must not discriminate in favor of one person or class of persons over others. State v. Bass, 171 N. C. 780, 87 S. E. 972, L. R. A. 1916D, 583. And, although the governing body may classify for the purpose of regulation, such classification must have some reasonable relation to the end in view. A classification manifestly has no such reasonable relation where it forbids one person to carry on a business on the ground that it is dangerous to the community, and allows another person similarly situated to carry on the same business simply because he happens to be engaged in it at the time of the passage of the ordinance. Schappi Bus Line v. City of Hammond (C. C. A. 7th) 11 F.(2d) 940; Town of Clinton v. Standard Oil Co., 193 N. C. 432, 137 S. E. 183, 55 A. L. R. 252; Crowley v. West, 52 La. Ann. 527, 27 So. 53, 47 L. R. A. 652, 78 Am. St. Rep. 355; Tugman v. City of Chicago, 78 Ill. 405; In re Bohen, 115 Cal. 372, 47 P. 55, 36 L. R. A. 618; Ex parte Dondero, 19 Cal. App. 66, 124 P. 884; Hudson v. Thorne, 7 Paige (N. Y.) 261. An ordinance providing that it should be unlawful to store gasoline or kerosene in wooden buildings in a city, but exempting from the terms of the ordinance wooden buildings in which they were stored at the time of the passage of the ordinance, would be absurdly discriminatory, but no more so, we think, than the ordinance in question, when it is

remembered that the only power to pass it is a charter provision which, for the safety of the public, authorizes that the sale of gasoline be regulated. So far as the public safety is concerned, it can make no possible difference that the business was being carried on at the time of the passage of the ordinance.

The line of cases exempting existing businesses from the terms of zoning ordinances or existing buildings from the terms of fire limit ordinances have no application; for in the case of such ordinances the classification adopted has a reasonable relation to the end in view, whereas, in the case of an ordinance which forbids the carrying on of a business as dangerous to the community, the exemption of existing businesses has no such reasonable relation. In the case of a zoning ordinance the council adopts a plan for the development of the city, not for the prohibition of things which threaten the public safety. The object in view does not demand that existing businesses in a residential district cease at once, but merely that increase of business be prevented so as not to hinder the development of the district as residential. Likewise in the case of fire limit ordinances, the exemption of existing buildings is entirely reasonable in view of the object of the ordinance, which is to prevent the increase of fire hazard; and all persons who build or repair within the limits established are subject to its terms. We think, however, that, as suggested by counsel, such an ordinance would unquestionably be void if it provided that all buildings constructed within the fire limits should be fireproof, except on lots where there were nonfireproof buildings at the time of the passage of the ordinance.

The distinction between a discriminatory classification such as that contained in the ordinance here and the valid classification of existing businesses and structures in zoning and fire limit ordinances has been recognized by the courts in a number of cases. Gamage v. Masonic Cemetery Ass'n (D. C.) 31 F.(2d) 308; People v. Kaul, 302 Ill. 317, 134 N. E. 740; Town of Clinton v. Standard Oil Co., supra.

From what has been said, it follows that in our opinion the ordinance in question is void because it is not expressly authorized by the lawmaking power and is an unreasonable exercise of a power conferred by the charter of the city in general terms. If, however, it be thought that the charter expressly authorizes its adoption, there can be no question that it is void because in contravention of the equal protection clause of the Fourteenth Amendment. In forbidding complainant to operate a filling station on its property while allowing the owner of other property similarly situated to use same for that purpose, it unquestionably denies complainant the equal protection of the laws. It is true that the equal protection clause does not forbid reasonable classification; but such classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis." Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U. S. 150, 155, 17 S. Ct. 255, 257, 41 L. Ed. 666. And as said in Royster Guano Co. v. Virginia, 253 U. S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989, classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." It cannot be said that an ordinance, the purpose of which is the safeguarding of the public in the handling of a dangerous commodity, makes a classification having a fair and substantial relation to its object, where it exempts from its operation established businesses, and applies restrictions only to businesses to be established in the future; nor can such an ordinance be said to treat all persons similarly circumstanced alike. The fact that one is already engaged in a dangerous business manifestly does not put him in a class which can be favored by the state in legislation regulating such business.

Since, therefore, we are of opinion that the ordinance in question is void both on the ground that it is unreasonable and on the ground that, if authorized by statute, it is violative of the Fourteenth Amendment, and since the penalties provided by the act are so great as to make it impossible for complainant to test its validity in a criminal prosecution without subjecting itself either to enormous losses in case of failure to sustain its position or to loss of use of its property pending litigation, we think that complainant had no adequate remedy at law and that the enforcement of the ordinance should have been enjoined. While a court of equity ordinarily has no jurisdiction to enjoin criminal prosecutions, even where same are based upon unconstitutional enactments, such equitable jurisdiction does exist where same is necessary to effectually protect rights of property. Dobbins v. Los Angeles, 195 U.

S. 223, 25 S. Ct. 18, 49 L. Ed. 169; Ex parte Young, 209 U. S. 123, 146–148, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Kennington v. Palmer, 255 U. S. 100, 41 S. Ct. 303, 65 L. Ed. 528; Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 17, 68 L. Ed. 255; Hygrade Provision Co. v. Sherman, 266 U. S. 497, 45 S. Ct. 141, 69 L. Ed. 402. The rule is thus stated in Terrace v. Thompson:

"The unconstitutionality of a state law is not of itself ground for equitable relief in the courts of the United States. That a suit in equity does not lie where there is a plain, adequate and complete remedy at law is so well understood as not to require the citation of authorities. But the legal remedy must be as complete, practical and efficient as that which equity could afford. Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 281, 29 S. Ct. 426, 53 L. Ed. 796; Walla Walla City v. Walla Walla Water Co., 172 U. S. 1, 11, 12, 19 S. Ct. 77, 43 L. Ed. 341. Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the federal Constitution wherever it is essential in order effectually to protect property rights and the rights of persons against injuries otherwise irremediable; and in such a case a person, who as an officer of the state is clothed with the duty of enforcing its laws and who threatens and is about to commence proceedings, either civil or criminal, to enforce such a law against parties affected, may be enjoined from such action by a Federal court of equity."

We think, also, that the defendants should be enjoined from prosecuting complainant under the provisions of the ordinance forbidding the installation of tanks without a permit. Without passing upon the validity of the ordinance requiring a permit, it appears that a permit was duly applied for and granted and that it was revoked solely because of the passage of the invalid ordinance complained of. We think, therefore, that the attempted revocation of the permit was void because based upon an invalid ordinance and that it should be treated as still in effect.

The revocation of the permit to build a driveway across Ninth street, however, rests upon a different basis. Much evidence was heard as to the traffic on Ninth street and as to the danger of maintaining such a driveway, and we cannot say that the revocation of this permit was based solely upon the invalid ordinance. Furthermore, the exercise of the rights granted by the permit involve, not the doing of work on complainant's private property, but an interference with the streets and sidewalks of the city. Even if complainant be entitled to the driveway as a matter of right, its remedy is not by injunction but by mandamus or other proper proceeding. The permit to construct the driveway having been revoked already, a court of equity cannot enjoin its revocation.

To conclude, we think that the learned judge below was correct in denying relief with respect to the Ninth street driveway, but that he should have granted the injunction prayed against the enforcement of the invalid ordinance and against prosecution thereunder or for the installing of the tanks. The cause will be remanded to the end that injunction may be granted in accordance with the views here expressed.

Reversed and remanded.