CONSUMERS GASOLINE STATIONS

*v.*

CITY OF PULASKI

(*Nashville,* December Term, 1955)

Opinion filed July 20, 1956.

WALLER, DAVIS & LANSDEN, D. L. LANSDEN, MACLIN P. DAVIS, JR., Nashville, D. C. LEE, Pulaski, for appellant.

TOM W. MOORE, City Attorney, HENRY & HENRY, Special Counsel, Pulaski, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The complainant, Consumers Gasoline Stations, an independent gasoline dealer, operating filling stations in various towns and cities in Tennessee, filed its bill in the Chancery Court of Giles County seeking to have the court declare Section 9-0205 of Title 2 of the Code of the City of Pulaski invalid and to enjoin the defendant from enforcing the ordinance against the complainant. The ordinance is as follows:

"It shall be unlawful for any person, firm or corporation to install within the city any underground tanks for the storage of gasoline or other flammable liquids, having a capacity of more than 1,100 gallons and not more than three such tanks shall be installed on the same premises.

"The Board expressly declares it is its intent by the adoption of this section to preserve the public health and safety of the citizens of Pulaski by regulating the capacity of underground storage tanks."

The Chancellor upheld the validity of the ordinance and dismissed the bill and this appeal resulted.

The bill charges that the ordinance violated the Fourteenth Amendment of the Constitution of the United States by depriving complainant of the use of its leased property in Pulaski without due process of law and denying complainant the equal protection of the law, because the ordinance allows previously existing filling stations to operate while at the same time it prohibits complainant from operating a filling station, except where the storage tanks are not more than 1,100 gallons.

It further contends that the ordinance violates Article 11, Section 8 of the Constitution of Tennessee in that it is class legislation granting to the operators of previously existing filling station privileges, immunities and exemptions not granted to complainant and others similarly situated; that the ordinance stifles competition and tends to create a monopoly in favor of previously existing filling stations.

The bill further charges that the ordinance limits the capacity of tanks to 1,100 gallons, whereas the State Fire Marshal's regulations limit capacity of each tank

to 6,000 gallons with a total capacity of 20,000 gallons for all tanks, and the ordinance purports merely to prohibit the installation of certain tanks, whereas there is little, if any, danger involved in the installation of tanks and the danger arises from the filling of tanks and small tanks require more frequent filling than large tanks.

It appears that complainant, in May 1955, leased certain property located within the City of Pulaski for a period of five years beginning August 1, 1955, for the purpose of building a filling station on the property to be used by complainant in the conduct of its business. In July 1955, complainant applied to the defendant for a permit authorizing it to construct on this property a filling station and to install three underground tanks for the storage of petroleum products, two of which tanks were to be of a capacity of 4,000 gallons and one of a capacity of 2,500 gallons. This application was denied as to the installation of the underground tanks because of Section 9-0205 of Title 2 of the Code of Pulaski. The City does not have the legal authority by statute to regulate the installation of underground tanks for the storage of petroleum products. The ordinance was passed by the defendant in the exercise of its general police power.

It is conceded that the ordinance in question had been in force seven years before the complainant leased the property in question and that he had notice of its existence at the time he leased said property.

There can be no doubt as to the general right of the City to pass an ordinance to prevent fires or explosions and such ordinances are well within the police power of the City, but this is not the question made here.

It is conceded by the complainant that the City had the right to pass such an ordinance but if such ordinance

discriminates against the complainant without any basis it is void. It contends that there are several other operators in Pulaski, who are now permitted and whose privileges were not taken away by passage of this ordinance to have underground tanks several times the maximum capacity provided for by the ordinance in question, to wit, 1,100 gallons. It is conceded that this ordinance would be valid if it were an initial proposition.

The Chancellor observed that we had no direct holding in Tennessee on this question here presented but was of the opinion that our zoning cases controlled and applied the rule in zoning cases as announced by this Court in *Spencer-Sturla Co. v. Memphis,* 155 Tenn. 70, 290 S.W. 608, that the ordinance in question was a valid exercise of the police power.

It should be noticed that in the case just cited the ordinance was by virtue of an act of the legislature and not by an ordinance of the city.

It was held in this case just cited that the principle of zoning appears to be founded in an effort to so regulate the future physical development of a city that the unrestricted congestion of traffic and housing will not increase or be repeated.

It was further stated that the exclusion from a resident district commercial enterprise generally is a valid exercise of the police power, and is not unreasonable; that the inclusion of a parcel of land in a residence district is not rendered unreasonable by the fact that the value of such parcel is greater for commercial purposes.

However, the ordinance in question is not a zoning ordinance but is evidently intended to prevent explosions and a risk of fire.

It might be said that zoning ordinances are *sui generis* and fall into a classification to themselves.

It was held by this Court in *Red Acres Improvement Club v. Burkhalter,* 193 Tenn. 79, 241 S.W.2d 921, that an ordinance which forbids one person to carry on a business on the ground that it is dangerous to the community, and allows another person to carry on the same business simply because he happens to be engaged in it at the time of the passage of the ordinance, is unreasonable. So far as the public safety is concerned, it can make no possible difference that the business was being carried on at the time of the passage of the ordinance. *Standard Oil Co. of N.J. v. City of Charlottesville,* 4 Cir., 42 F.2d 88; *Boothby v. City of Westbrook,* 138 Me. 117, 23 A.2d 316; *Town of Clinton v. Standard Oil Co.,* 193 N.C. 432, 137 S.E. 183, 55 A.L.R. 252.

An ordinance which forbids a person from operating a filling station on his property, while allowing the owner of other similar property to use it for that purpose because the other's property was so used when the ordinance became effective, is unconstitutional in that it unquestionably denies the equal protection of the laws to the person forbidden to use his property for a filling station. *Standard Oil Co. v. Charlottesville, supra; Boothby v. City of Westbrook, supra.*

It is expressly held in the above cited case of *Standard Oil Co. v. Charlottesville, supra,* the fact that a person is already engaged in a dangerous business does not put him in a class which can be favored in an ordinance regulating such business.

Although the city may have the right to regulate the filling station business, it does not have the right to exclude certain persons from engaging in the business

while allowing others to do so. *State v. Harris,* 216 N.C. 746, 6 S.E.2d 854, 128 A.L.R. 658; 24 Am. Jur. 627.

■ The obvious effect of the ordinance is to prohibit the construction of additional filling stations in Pulaski which would compete with those in existence at the time of the passage of the ordinance, thereby creating and preserving a monopoly in favor of stations in existence at the time of the enactment of the ordinance. It might be stated here that this ordinance does not violate Article 11 Section 8 of our Constitution as this provision applies to legislative acts and not ordinances.

However, this ordinance being discriminatory in nature clearly violates Article I, Section 8 of the Constitution of Tennessee.

■ ■ In the cases relied upon by the Chancellor the court was considering zoning questions and none of these cases involved a safety regulation similar to the ordinance in the case at hand. Although a zoning ordinance might be valid even though it allows preexisting businesses to continue while prohibiting the establishment of other similar businesses in same district, yet we hold that a municipal ordinance cannot validly prohibit persons engaged in a business from doing an act, while at the same time exempting persons in the same business from the ordinance solely on the ground that they were in the business at the time the ordinance was passed.

We think the Chancellor was in error sustaining the demurrer to complainant's bill and in upholding the validity of the ordinance in question.

It results that the decree must be reversed and the cause proceeded with consistent with this opinion.