**STANDARD OIL COMPANY, a corporation, Plaintiff,**

v.

**CITY OF GADSDEN, a municipal corporation in the State of Alabama, and Z. E. Wright as Chief of the Fire Department of Gadsden, Alabama, Defendants.**

Civ. A. No. 66–419.

United States District Court
N. D. Alabama, M. D.

Jan. 25, 1967.

Bradley, Arant, Rose & White, Birmingham, Ala., and Clarence Simmons, Jr., Gadsden, Ala., for plaintiff.

Roy D. McCord and Bill Bradley, Gadsden, Ala., for defendants.

GROOMS, District Judge.

This is an action for a declaration that a certain ordinance of the City of Gadsden, Alabama, is unconstitutional and for a permanent injunction against its enforcement.

Since July, 1959, the plaintiff, Standard Oil Company, has owned and operated a retail service station at 1900 Rainbow Drive, within the police jurisdiction of the City of Gadsden. The facilities at this station for storage of gasoline are presently three 1,000 gallon underground tanks. Desiring to remodel the station and to increase the capacity of its underground storage facilities, plaintiff applied on March 9, 1966, to the fire department of the City for permission to install underground tanks at the station as follows: one 2,000 gallon tank, two 3,000 gallon tanks, and one 4,000 gallon tank.

The plaintiff's application was denied because the provisions of Section 4 of the City's Ordinance No. 1715. Ordinance No. 1715 was adopted on May 8, 1952. The preliminary portion of the ordinance states that its purpose is to amend the corresponding section of Ordinance No. 1702, which is a comprehensive ordinance regulating the storage, distribution, transportation and delivery of flammable liquids, which has been in force since December 12, 1950. The pertinent portion of Ordinance 1715 is as follows:

It shall be unlawful for any person, firm or corporation, or for the agent, servant or employee of any person, firm or corporation, to install underground at any location where gasoline, naptha or other liquid motor fuel or any substitute therefor, is stored within the corporate limits or the police jurisdiction of the City of Gadsden any tank for the storage of gasoline, naptha or other liquid motor fuel or any substitute therefor, having a capacity in excess of 20 barrels.

It shall be unlawful for any person, firm or corporation, or for the agent, servant or employee of any person, firm or corporation, to install underground at any location where gasoline, naptha or other liquid motor fuel or substitute therefor, is stored within the corporate limits or police jurisdiction of the City of Gadsden more than 3 tanks for the storage of gasoline, naptha or other liquid motor fuel or any substitute therefor, when the aggregate storage capacity is more than 60 barrels; and when any such tank or tanks are so installed, each such tank shall be maintained as a separate storage unit and shall not be connected in any manner with any other such tank or tanks so as to permit the flow of such gasoline, naptha or other liquid motor fuel by gravity or force from one such tank to the other.

By agreement of the parties, portions of the evidence in this case have been received by a stipulation and by an affidavit of plaintiff's operations manager for the state of Alabama. According to plaintiff's operations manager, gasoline sales volume at the station is such that, with the present storage facilities, it is necessary to deliver gasoline to the station an average of three times per week. The proposed storage facilities would permit gasoline deliveries to be made at the station approximately three times per month. This reduction in delivery requirements will produce savings of drivers' time, mileage and utilization of equipment, resulting in cost savings to the plaintiff of approximately $800 per year at the 1900 Rainbow Drive Station alone. In addition to this station, plaintiff owns five other retail service stations within the city limits and police jurisdiction of Gadsden, all of which are

subject to the restrictions imposed by Ordinance No. 1715. At two of these stations deliveries are being made an average of three times per week and at three of these stations deliveries are being made an average of two times per week. With larger storage facilities, gasoline deliveries at these stations could be reduced to three times per month and two times per month, respectively, resulting in additional cost savings to the plaintiff of approximately $3,000 per year.

Although the terms of Ordinance No. 1715 do not limit its application to any particular type of location, the stipulation filed by the parties and the exhibits attached thereto show that, in practice, the restrictions on the size and number of underground storage tanks have only been applied to retail service stations and, since Ordinance No. 1715 was passed, at least twelve permits have been issued for the installation of underground storage tanks with capacities up to 10,000 gallons. All these permits were issued for non-retail locations such as the premises of businesses operating a fleet of motor vehicles.

During the period of approximately two years when permits were required for the installation of underground storage tanks prior to the time the restrictions of Ordinance No. 1715 were imposed, at least six permits were issued for installation at retail service stations of underground storage tanks with capacities up to 6,000 gallons. Since approximately 1946, the City of Gadsden has maintained for its own use at the city motor shop an underground tank with a capacity in excess of the maximum amount permitted by Ordinance No. 1715. The city has not required by ordinance or otherwise the removal or discontinuance of use of any of the underground storage tanks for which its fire department has issued the permits described above.

■ In support of its contention that the ordinance does not promote safety, plaintiff offered the oral testimony of two witnesses. The first of these was Mr. John Ainlay, a chemist, who is an official at the Chicago office of the American Petroleum Institute. He was formerly Chief of the Division of Motor Fuels in the Department of Inspection of the State of Nebraska. He has had extensive experience testing petroleum products and his present work is involved with problems of safety in handling and storage of petroleum products. He has produced two motion pictures on subjects relating to fire safety in the handling of petroleum products. He has done extensive teaching of professional firefighters and of city and state officials having responsibility for fire prevention. The second witness was Mr. George F. Prussing, a member of the Society of Fire Protection Engineers and other national safety organizations, including the Committee on Flammable Liquids of the National Fire Protection Association. Mr. Prussing is an expert of worldwide reputation in petroleum safety and now serves as a consultant to governments on the safety aspects of petroleum handling and storage. He has been responsible for drafting flammable liquids codes for a number of states and municipalities. He has also participated in drafting the portion of the National Fire Code which is concerned with handling and storage of flammable liquids. The testimony of these two witnesses, including an impressive demonstration put on by Mr. Ainlay, convinces the court that the limitations imposed by Ordinance No. 1715 on the size and number of underground storage tanks have no reasonable relationship to either public safety or public welfare.

Gasoline is, of course, a flammable liquid. It is capable of being both burned and exploded. It burns, however, only in vapor form and will explode only in vapor form; and in both cases it is essential that a proper mixture of air and vapor be present in order to cause it to either burn or explode. There must be at least 1.7% but not more than 7% of gasoline vapor present in air to support combustion. Any mixture of gasoline vapor and air having less than 1.7%

of gasoline vapor or more than 7% of gasoline vapor will not burn. In an operational underground storage tank the mixture of air and gasoline is always approximately 25% gasoline vapor in that portion of the tank that is not filled with liquid gasoline. A flame inserted into such a mixture will not ignite it.

In the handling of gasoline, the greatest danger of fire occurs during periods when it is being transferred from one container to another. By minimizing the number of times gasoline is transferred and handled the danger of fire is minimized.

Gasoline vapor is heavier than air. Its relative density prevents the vapor from being present in the vent pipe of underground tanks, the openings of which are required to be at least twelve feet above ground level. During the time an underground tank is in the process of being filled vapor is forced upward out of the vent pipe and this vapor produces a burnable mixture as it dissipates in the outside air. However, even during filling there is no burnable mixture beyond a few feet from the top of the vent pipe. This condition occurs during filling whether the tank is 1,000 or 10,000 gallon capacity.

Fire above ground has no effect on gasoline stored underground since the vapor mixture in an underground tank is always above the combustible range, or "too rich to burn." It is impossible to force fire into an underground tank. Fires have occurred at filling stations where the heat was so intense as to melt the gasoline pumps and yet the gasoline stored underground was not ignited or exploded.

Fire insurance rates on filling stations require no increase in premium based on the quantity of gasoline stored underground. The rate for insurance premiums would be the same if 1,000, 10,000 or 30,000 gallons were stored underground.

In its answer, the City says that Ordinance No. 1715 is a reasonable exercise of its police power with the aim of protecting the health, welfare and safety of the citizens. The City has not offered any testimony or other evidence supporting the challenged ordinance. Counsel for the City have, however, advanced the contention that underground storage of gasoline creates a potential fire hazard because of the risk of leaks which could permit the escape of gasoline into the ground and, eventually, in the City's sewers. They maintain that this risk is greater when the quantity of gasoline stored is increased. The evidence does not support this contention. It is apparent that the amount of gasoline that will escape from a leaking underground tank is not dependent on the size of the tank but on the size of the leak. If the tank is in use, then, presumably, it will not at any time be permitted to become completely empty and it is reasonable to expect that there will always be some gasoline in the tank to escape through a leak, regardless of the size of the tank. Leaks generally result from corrosion. The metal used and required by Underwriters Laboratory in tanks of larger sizes is of heavier gauge than the metal used in smaller tanks, of the sizes permitted by Ordinance No. 1715. This fact alone would tend to reduce the occurrence of leaks in tanks of larger sizes. Moreover, assuming a given quantity of gasoline is to be stored underground, the total amount of surface metal exposed to corrosion is reduced by using larger tanks.

In legal theory, plaintiff's attack upon Ordinance No. 1715 is threefold. Plaintiff contends that it denies plaintiff due process of law under Section 1 of the fourteenth amendment of the United States Constitution and under Article 1, Section 6, of the Alabama Constitution of 1901. Plaintiff further contends that the ordinance denies plaintiff equal protection of the laws under Section 1 of the fourteenth amendment to the United States Constitution. Finally, plaintiff contends that the ordinance is null and void under Article 4, Section 89, of the Alabama Constitution of 1901 because it conflicts with regulations of the State Fire Marshal, which regulations have the effect of law.

■ Turning first to the question of denial of due process, the court is mindful of the fundamental principles that an ordinance is presumed constitutional and that the attacking party must establish its invalidity beyond a reasonable doubt. The ordinance is due to be sustained if there is any reasonable basis for its enactment, and a court should interfere with the exercise of police power by a municipality only when it is clearly unlawful. The function of a reviewing court is solely to determine whether legislative action under the power delegated to the municipality passes boundaries of the power delegated or exceeds boundaries of reason. However, while it is not the office of the courts to balance and weigh factual considerations, in every case it must appear that the means adopted are reasonably necessary and appropriate to the accomplishment of a legitimate object falling within the scope of the police power. There must be a real and substantial connection between the provisions of a police regulation and its avowed purpose, and to be valid as a legislative exercise of police power legislation must be clearly and reasonably related to the end in view.

■ The court is of the opinion that the evidence has established that the restrictions on the size and number of underground storage tanks imposed by Ordinance No. 1715 are not reasonably calculated to promote the public safety or the public welfare by reducing the hazards of fire or otherwise. Indeed, the practical effect of these restrictions is just the opposite. Evidence clearly established that the greatest danger of fire is presented when gasoline is being transferred from the truck into the underground tank. Once it is deposited in the underground tank it no longer creates any significant hazard. The restrictions imposed by Ordinance No. 1715 have a direct tendency to increase the number of occasions when it is necessary to refill the underground tanks and therefore increase the number of occasions when the greatest fire hazard is presented. The more frequent filling necessitated by the smaller storage capacity also has a tendency to increase the number of gasoline transport trucks exposed to the hazard of traffic accidents on streets and highways. Both of these real fire hazards are increased by the restrictions imposed by Ordinance No. 1715; but the evidence does not show any real fire hazard that would be increased if these restrictions were removed and property owners such as the plaintiff were permitted to install underground storage tanks of larger capacities. A number of courts considering ordinances imposing this same type restriction have reached the same conclusion. Richard DeWyer v. City of Fort Payne, not officially reported, Circuit Court of DeKalb County, Alabama, July 30, 1966; Standard Oil Company v. City of McComb, not officially reported, Civil Action No. 3713, United States District Court, Southern District of Mississippi, August 20, 1965; Consolidated Petroleum Corp. v. City of Beloit, not officially reported, Rock County, Wisconsin, Court No. 3, Beloit, July 25, 1966; Osborne O'Quinn v. City of Fort Pierce, not officially reported, Case No. 6065–E, 9th Judicial Circuit of Florida, affirmed per curiam 122 So.2d 252 (Dist.Ct.App. 1960); Borough of Manorville v. Flenner, 286 Pa. 103, 133 A. 30 (1926). The same principles enunciated in these cases dealing with storage tanks have also been applied by courts considering ordinances restricting the gallon capacity of tank trucks transporting and unloading gasoline. Ordinances of the latter type were invalidated in the following cases: McCoy v. Town of York, 193 S.C. 390, 8 S.E.2d 905 (1940); Clark Oil & Refining Corp. v. City of Tomah, 30 Wis.2d 547, 141 N.W.2d 299 (1966); Ex Parte Rodgers, 371 S.W.2d 570 (Tex.Cr.App. 1933).

■ Turning to the question of equal protection of the laws, it is to be observed that Ordinance No. 1715 provides: "It shall be unlawful for any person * * * to install * * *." On its face, the ordinance creates an arbi-

trary classification because its restrictions operate only prospectively and do not affect storage tanks which were installed at the time the ordinance was adopted.[1]  If the threat to public safety turns on the capacity of a storage tank, that threat is the same irrespective of when the tank was installed.  An ordinance attempted to be justified as a safety regulation which operates only prospectively, leaving existing hazards unaffected, creates an arbitrary classification and cannot be allowed to stand.  Consumers Gasoline Stations v. City of Pulaski, 200 Tenn. 480, 292 S.W. 2d 735 (1956); Standard Oil Co. of New Jersey v. City of Charlottesville, 42 F.2d 88 (4th Cir. 1930); Boothby v. City of Westbrook, 138 Me. 117, 23 A.2d 316 (1941).

In Standard Oil Co. of New Jersey v. City of Charlottesville, supra, the 4th Circuit Court of Appeals invalidated an ordinance prohibiting the future construction of retail gas stations in residential areas on the ground that the ordinance created an arbitrary classification by permitting the operation of stations which already existed at the time of its passage.  The following language from that decision is pertinent:

> * * *  [T]he ordinance is unreasonable, also in that it exempts existing filling stations from its operation. Ordinances must be uniform, fair, and impartial in their operation.  They must not discriminate in favor of one person or class of persons over others. [Citation omitted]  And, although the governing body may classify for the purpose of regulation, such classification must have some reasonable relation to the end in view.  A classification manifestly has no such reasonable relation where it forbids one person to carry on a business on the ground that it is dangerous to the community, and allows another person similarly situated to carry on the same business simply because he happens to be engaged in it at the time of the passage of the ordinance.  [Citations omitted]

> * * *  So far as the public safety is concerned, it can make no possible difference that the business was being carried on at· the time of the passage of the ordinance.

> The line of cases exempting businesses from the terms of zoning ordinances or existing buildings from the terms of fire limit ordinances have no application; for in the case of such ordinances the classification adopted has a reasonable relation to the end in view, whereas, in the case of an ordinance which forbids the carrying on of a business as dangerous to the community, the exemption of existing businesses has no such reasonable relation.  In the case of a zoning ordinance the council adopts a plan for the development of the city, not for the prohibition of things which threaten the public safety.  The object in view does not demand that existing businesses in a residential district cease at once, but merely that increase of business be prevented so as not to hinder the development of the district as residential.

> * * * * * *

> * * *  [T]here can be no question that it is void because in contravention of the equal protection clause of the Fourteenth Amendment.  In forbidding complainant to operate a filling station on its property while al-

---

1.  The prospective operation of Ordinance No. 1715 is emphasized by Section 19 of Ordinance No. 1702: "This ordinance [Ordinance No. 1715 is incorporated in Ordinance No. 1702, since Ordinance No. 1715 merely amended Section 4 of Ordinance No. 1702] shall not be retroactive to require compliance with the provisions thereof by and with respect to existing bulk plants, retail filling stations, gasoline trucks, etc., now in use and now operating, but new built plants, retail filling stations, gasoline trucks, and other plants or equipment, the specifications of which are regulated by this article, shall comply with the provisions thereof, and all replacement of existing facilities as above stated, and all substantial changes or improvements to such existing facilities made after the adoption of this article shall be made in conformity with the provisions thereof."

lowing the owner of other property similarly situated to use same for that purpose, it unquestionably denies complainant the equal protection of the laws. \* \* \* It cannot be said that an ordinance, the purpose of which is the safe-guarding of the public in the handling of a dangerous commodity, makes a classification having a fair and substantial relation to its object, where it exempts from its operation established businesses, and applies restrictions only to businesses to be established in the future; nor can such an ordinance be said to treat all persons similarly circumstanced alike. The fact that one is already engaged in a dangerous business manifestly does not put him in a class which can be favored by the state in legislation regulating such business. 42 F.2d at pp. 92–93.

■ Under the principle of the decision in Standard Oil Co. of New Jersey v. City of Charlottesville, supra, and the other cases cited above, it is clear that the fact that Ordinance No. 1715 operates only prospectively creates an artificial classification which discriminates against persons in the class of the plaintiff by forbidding the plaintiff and others who would apply for permission today to install and use underground tanks of capacities larger than 20 barrels while permitting the owners of other retail service stations similarly situated to enjoy the use of tanks in excess of that limitation. In its application, the ordinance has still another discriminatory aspect which renders it unconstitutional. The evidence is undisputed that the limitations on the size and number of underground storage tanks have been applied only to retail service stations and have not been applied to any type of business where gasoline is not stored for resale to the public. The evidence is clear that there is no difference in the fire safety hazard created by underground storage of gasoline at service stations and the hazard created by such a storage at locations where gasoline is not stored for resale to the public. In

these two respects the ordinance denies plaintiff equal protection of the laws.

The stipulation filed by the parties also establishes that the Fire Marshal of the State of Alabama, acting pursuant to authority contained in Title 28, Sections 47(9) and 47(13) and Title 55, Section 38, of the Code of Alabama, has approved and adopted as effective throughout the State certain regulations known as the Flammable and Combustible Liquids Code of 1966. These regulations are printed in National Fire Protection Association Pamphlet No. 30 and are part of the evidence. They contain extensive provisions regulating the handling and storage of flammable liquids, including gasoline, in a variety of circumstances and situations. In Section 22 of these regulations there are detailed provisions for the installation of underground tanks. These provisions are concerned with location, depth and cover, corrosion protection and vents. Nowhere in these regulations is any limitation imposed on the size of underground tanks used for the storage of flammable liquids.

Article 4, Section 89, Constitution of Alabama, 1901, provides:

The legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state.

■ Being adopted pursuant to legislative authority, the official regulations of the State Fire Marshal are to be given the effect of law. Since Gadsden's Ordinance No. 1715 prescribes limitations on the size of underground storage tanks, it is inconsistent with the regulations of the Fire Marshal of the State of Alabama, which regulate storage of gasoline without any such limitation. To impose a limitation where none would otherwise exist inevitably creates a conflict. Moreover, as pointed out above, the practical effect of these limitations makes them inconsistent with those promulgated by the State Fire Marshal in that they tend to increase the fire hazard, which the State Fire Marshal's regulations are de-

signed to reduce, because the limitation on the size of storage facilities necessitates more frequent deliveries from transport trucks to the storage tanks, which is the most significant hazard of the entire gasoline distribution process.

The plaintiff has called the court's attention to a decision by the Superior Court of Hall County, Georgia, in Sherwood Plaza, Inc. v. City of Gainesville, et al., decided March 30, 1965. That court held that an ordinance prohibiting installation of gasoline storage tanks larger than 1,000 gallons was invalid because it conflicted with regulations promulgated by the Fire Marshal of the State of Georgia which did not prescribe any limitation on the size of underground tanks. Section 2–401 of the Constitution of the State of Georgia provides that laws of a general nature shall have uniform operation throughout the state and no special laws shall be enacted in any case for which provision is made by an existing general law. The result reached by the Hall County Superior Court seems sound and correct. For the purposes of the present case, the operative effect of Article 4, Section 89 of the Constitution of Alabama is substantially the same as that of Section 2–401 of the Constitution of the State of Georgia, and the principle applied by the Hall County Superior Court is applicable in this case.

For the reasons stated, the relief prayed for by the plaintiff is due to be granted. In compliance with Rule 52 of the Federal Rules of Civil Procedure, the court finds the following facts:

### FINDINGS OF FACT

1. Plaintiff, Standard Oil Company, owns a total of six retail service stations within the city limits and police jurisdiction of the City of Gadsden, including one such station located at 1900 Rainbow Drive.

2. Plaintiff's six stations are subject to the restrictions of Gadsden's City Ordinance No. 1715, which contains the following provisions:

It shall be unlawful for any person, firm or corporation, or for the agent, servant or employee of any person, firm or corporation, to install underground at any location where gasoline, naptha or other liquid motor fuel or any substitute therefor, is stored within the corporate limits or the police jurisdiction of the City of Gadsden any tank for the storage of gasoline, naptha or other liquid motor fuel or any substitute therefor, having a capacity in excess of 20 barrels.

It shall be unlawful for any person, firm or corporation, or for the agent, servant or employee of any person, firm or corporation, to install underground at any location where gasoline, naptha or other liquid motor fuel or substitute therefor, is stored within the corporate limits or police jurisdiction of the City of Gadsden more than 3 tanks for the storage of gasoline, naptha or other liquid motor fuel or any substitute therefor, when the aggregate storage capacity is more than 60 barrels; and when any such tank or tanks are so installed, each such tank shall be maintained as a separate storage unit and shall not be connected in any manner with any other such tank or tanks so as to permit the flow of such gasoline, naptha or other liquid motor fuel by gravity or force from one such tank to the other.

3. In order to make its delivery operations more efficient and more economical, plaintiff desires to increase the capacity for underground storage of gasoline at all six of its gasoline stations beyond that permitted by Ordinance No. 1715.

4. The delivery operations necessary to accommodate the gasoline sales volume of plaintiff's business under the restrictions on size and number of underground gasoline storage tanks imposed by Ordinance No. 1715 cost plaintiff $3800 per year more than the delivery operations which could be arranged without such restrictions.

5. Pursuant to requirements of other ordinances, plaintiff on March 9, 1966,

made application to appropriate city officials for a permit to install underground at its 1900 Rainbow Drive station one 2,000 gallon tank, two 3,000 gallon tanks and one 4,000 gallon tank, all for storage of gasoline.

6. Because of the restrictions imposed by Ordinance No. 1715, plaintiff's request for a permit was denied on March 10, 1966.

7. The safety hazard presented by underground storage of gasoline is not affected by the number or size of properly installed tanks at a given location.

8. In the process of distributing gasoline for retail consumption, the greatest hazard of fire exists when the gasoline is being transferred from one container to another, such as the filling of underground tanks from bulk transport trucks; therefore, restrictions on the size and number of underground tanks, which produce a need for more frequent deliveries and filling operations, tend to increase rather than decrease the hazard of fire.

9. The restrictions imposed by Ordinance No. 1715 on the size and number of underground tanks installed for storage of gasoline are not reasonably related to the avowed purpose of promoting public safety and welfare, for which the said ordinance was enacted.

10. Whatever safety hazard may be created by the installation of underground gasoline storage tanks in excess of 20 barrels, or 1100 gallons, is no less in the case of such tanks installed before Ordinance No. 1715 became effective in May of 1952, than it is in the case of such tanks installed after the effective date of the ordinance.

11. In practice, the restrictions of Ordinance No. 1715 on the size and number of underground storage tanks have been applied only at retail service stations and have not been applied at locations where the gasoline to be stored is not to be sold at retail.

12. Whatever safety hazard may be created by the installation of underground gasoline storage tanks in excess of 20 barrels, or 1100 gallons, is no greater when such tanks are installed at retail service stations than it is when such tanks are installed at locations where the gasoline is not sold at retail.

13. Pursuant to legislative authority, the Fire Marshal of the State of Alabama has approved and adopted regulations for the storage and handling of flammable liquids, including gasoline, which do not contain any restriction or limitation on the size or number of underground tanks used for the storage of gasoline.

14. To the extent that Ordinance No. 1715 imposes restrictions on the size and number of underground tanks for storage of gasoline, the said ordinance is inconsistent with the regulations approved and adopted by the Fire Marshal of the State of Alabama.

## CONCLUSIONS OF LAW

1. Ordinance No. 1715 of the City of Gadsden deprives plaintiff of its liberty and property without due process of law, in violation of the fourteenth amendment of the United States Constitution, by unreasonably restricting plaintiff's use of its property by police regulations not reasonably related to the avowed purpose for which the said regulations were enacted.

2. Ordinance No. 1715 of the City of Gadsden denies plaintiff equal protection of the laws in violation of the fourteenth amendment of the United States Constitution by discriminating against plaintiff and other retail sellers of gasoline in favor of retail sellers of gasoline who had installed larger or more numerous tanks than those permitted by Ordinance No. 1715 prior to the enactment of the said ordinance.

3. As applied, Ordinance No. 1715 of the City of Gadsden denies plaintiff equal protection of the laws in violation of the fourteenth amendment of the United States Constitution by discriminating against plaintiff and others who desire to use their property for storage of gasoline for sale at retail in favor of others, including the City of Gadsden,

who desire to use their property for storage of gasoline for purposes other than selling such gasoline at retail.

4. The restrictions of Ordinance No. 1715 on the size and number of underground tanks installed for the storage of gasoline are rendered null, void, and of no effect by Article 4, Section 89 of the Constitution of Alabama of 1901, because such restrictions are in conflict with regulations of the Fire Marshal of the State of Alabama, which regulations were approved and adopted pursuant to legislative authority and which have the effect of law.