# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

## APRIL TERM, 1916

[No. 2199]

ALFRED CHARTZ, D. G. KITZMEYER, MRS. C. W. FRIEND, ANDREW ROBERT, W. H. KAISER, W. H. SWEETLAND, MRS. E. KITZMEYER, GEE HING, MRS. D. G. KITZMEYER, MRS. M. E. RINCKEL, MRS. D. CIRCE, GEO. E. KITZMEYER, GEO. E. KITZMEYER (AS ADMINISTRATOR OF THE ESTATE OF MRS. L. E. KITZMEYER, DECEASED); CARSON AERIE OF EAGLES, No. 1006 (A CORPORATION), BY ITS TRUSTEES; MRS. S. J. KELSEY, J. S. SHAW, LUCY KLASS, MARIE TOUPIN, MRS. MARIE L. SUMMERFIELD, AND MRS. EMILY COFFIN-ROSS, APPELLANTS, *v.* CARSON CITY (A MUNICIPAL CORPORATION), AND A. MACDONALD, DENNIS HURLEY, PETER CROW, ROBERT L. FULSTONE, AND GEORGE GILLSON, THE DULY ELECTED, QUALIFIED, AND ACTING CITY TRUSTEES OF SAID CARSON CITY, RESPONDENTS.

[156 Pac. 925]

1. MUNICIPAL CORPORATIONS — POWERS — INDEBTEDNESS — "GREAT NECESSITY OR EMERGENCY."

Rev. Laws, 978, providing that in cases of great necessity or emergency, the governing body of a town or city may, by unanimous vote and with the approval of the state board of

revenue, authorize a temporary loan to meet such necessity or emergency, does not authorize a city organized under a special charter, which as amended by Stats. 1907, cc. 29, 146, gave the trustees' power to improve its streets and to issue bonds subject to the right of the voters to petition for a special election on the question, to make a temporary loan to pay for the paving of street intersections' on its main street, since "great necessity or emergency" means something greatly out of the ordinary, which could not be met by the usual machinery of the government, immediately indispensable, and does not include what is merely essential in the sense of being convenient.

APPEAL from the First Judicial District Court, Ormsby County; *T. C. Hart,* Judge.

Suit by Alfred Chartz and others against Carson City and others, to restrain the issuance of notes or other evidence of indebtedness of Carson City. Judgment for the defendants, and the plaintiffs appeal. **Reversed and remanded.**

*Alfred Chartz,* for Appellants:

The act of the legislature, impliedly creating the board of revenue, has been repealed. The act of 1915 merely suspends the act of 1913, which act clearly repeals the act of 1901, which repeal carries the repeal of its amendatory act of 1903, particularly referring to section 13, impliedly creating a state board of revenue. "The repeal of an act effects the repeal of an act amendatory of the act repealed." (*Hemstreet* v. *Wassum,* 49 Cal. 273.) "An amendment in such terms as to stand in the stead of an original section of an act is repealed with the repeal of the act in which it stands." (26 Am. & Eng. Ency. Law, 2d ed. p. 744.)

The resolution of the board of city trustees of Carson City, asking approval of the alleged state board of revenue, fails to state facts sufficient to constitute any cause of action, or to authorize said state board of revenue to approve the same, and such failure can be taken advantage of at any time. At no time has there existed great necessity or emergency for the contemplated street paving. The existence or nonexistence of a great necessity or

emergency is a question of fact; but a determination of the matter by a board of city trustees is not final, but is subject to review by the courts. (*San Christina Investment Co.* v. *C. & C. of San Francisco,* 167 Cal. 762.)

*James G. Sweeney,* for Respondents:

Such an emergency as is contemplated by the law existed. The word "emergency" is meant to imply, in the light of the law, such a condition of affairs as would warrant a board composed of reasonable beings in acting in accordance with common sense in remedying a condition which, in their judgment, called for relief.

*Geo. B. Thatcher,* Attorney-General, *amicus curiæ:*

The act of the legislature creating the board of revenue has not been repealed. An act which adopts a part or portion of another act is not repealed by the repeal of the first act. (*S. V. W. W.* v. *San Francisco,* 22 Cal. 434; *Lyles* v. *McCowen,* 82 S. C. 127; *Scheenke* v. *Union Depot Co.,* 4 Pac. 905; *State* v. *Junkin,* 123 N. W. 630; *State* v. *Williams,* 237 Mo. 178, 182; *Culver* v. *People,* 161 Ill. 89; *Ventura Co.* v. *Clay,* 112 Cal. 65, 73.)

"Whenever a question of fact is submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact; and if such determination comes into inquiry before the courts, it cannot be overthrown by evidence going only to show that the facts were otherwise than so found and determined." (*Pittsburg Co.* v. *Backus,* 154 U. S. 421, 434, 48 L. Ed. 39; *Western Union Tel. Co.* v. *Taggert,* 163 U. S. 1, 30.)

By the Court, McCARRAN, J.:

This action was commenced in the district court of Ormsby County by certain citizens and taxpayers of Carson City, who prayed for a restraining order and an injunction against the respondents as the duly elected, qualified, and acting city trustees, the object of the injunction being to restrain the said city trustees from issuing the notes or other evidence of indebtedness of Carson City for the purpose of paying for the paving of

certain street intersections in Carson City, and also to restrain the said board of trustees from the passage of any ordinance ordering or commanding the plaintiffs, appellants herein, or any of them, to pave the section of Carson Street upon which their properties abut. It appears from the record that certain property owners and taxpayers on Carson Street in the city of Carson, thirteen in number, petitioned the city trustees to pave said Carson Street. After considering the matter, the board of city trustees passed a resolution, providing for the paving of Carson Street; and, in order to meet the expenses of the paving of the intersections of Carson Street with other streets of the town crossing the same, which space was chargeable to the city, the board of city trustees, by a unanimous vote, passed the following resolution:

"Whereas, it appearing to the board of trustees of Carson City, Nevada, that Carson Street, the main thoroughfare of said Carson City, is in a deplorable condition and in need of immediate repair; and whereas, the general fund of said city, from which is drawn the money necessary to make such repairs, is in such condition that no money can well be taken therefrom for making any repair whatever on said street; and whereas, Carson City can secure the pavement of said street from Washington Street on the north to Second Street on the south, by paving the intersections thereof, at a cost of $10,000: Now, therefore, by reason of the great necessity or emergency existing, be it resolved that Carson City, by the unanimous vote of its board of trustees, authorize, and by this resolution does authorize, a temporary loan of $10,000 for the purpose of paving the intersections of cross streets with said Carson Street from Washington Street on the north to Second Street on the south, all in Carson City, Nevada; that this loan be known as an 'Emergency Loan'; that such emergency indebtedness be paid by a levy of an extra tax sufficient to pay the same at the next tax levy to be made on or about the first Monday in March, 1916;

that such extra tax be known as an 'Emergency Tax'; that this resolution be spread upon the minutes of this board and that a certified copy thereof be sent forthwith to the State Board of Revenue asking for its approval by resolution."

This resolution was submitted to the governor, state controller, and attorney-general, styling themselves the "State Board of Revenue," and a resolution was passed by that body approving and authorizing a temporary loan of $10,000 to be made by Carson City for the purposes set forth in the resolution of the board of trustees of said city. It is to prevent the carrying out of this resolution on the part of the board of trustees and the creating of an indebtedness against the property of the city of Carson by said board that these proceedings were instituted. Judgment having been rendered against the plaintiffs in the court below, appeal is taken from the judgment to this court and a number of assignments of error are relied upon.

The city of Carson is an incorporated city, its charter having been passed by a special act of the legislature on March 25, 1875. A number of amendatory acts have been passed by successive legislatures, many of which are unimportant to the matter at bar.

By the legislative act of February 28, 1907, section 10 of the city charter was amended, and the section as amended reads in part as follows:

"The board of trustees shall have the following powers: * * * Third—To lay out, extend and change the streets and alleys in said city, and to provide for the grading, draining, cleansing, widening, lighting, or otherwise improving the same; also to provide for the construction, repair, preservation, grade, and width of sidewalks, bridges, drains and sewers, and for the prevention and removal of obstructions from the streets, alleys and sidewalks, drains and sewers of said city. * * * " (Stats. Nev. 1907, p. 53.)

By the legislative act of March 28, 1907, the act incorporating the city of Carson was amended; and

sections 33 and 34 of the act as amended are in part as follows:

"SEC. 33. The board of trustees shall have the power by ordinance to grant any franchise or create any city or municipal bonded indebtedness, and to levy and collect a special tax to pay the interest and principal of such bonded indebtedness. * * *   But no ordinance for such purpose or purposes shall be valid or effective for any purpose unless the board of trustees shall first pass a resolution which shall set forth, fully and in detail, the purpose or purposes of the proposed bonded indebtedness, the terms, amount, the rate of interest and the time within which redeemable, and on what fund; or the applicant for, the purpose and character of, terms, * * *. Such resolution shall be published in full in some newspaper published in the city, for the period of at least four weeks. On the first regular or special meeting of the board of trustees after the expiration of the period of such publication, the board of trustees shall, unless a petition shall be received by it, as in the next section provided, proceed to pass an ordinance for the issuing of the bonds, * * * ; *provided,* that such bonds shall be issued or municipal indebtedness created * * * only on the same terms and conditions in all respects as expressed in the resolutions as published, otherwise such ordinance shall be null and void. * * * *" (Stats. Nev. 1907, p. 344.)

Section 34 in part provides:

"The ordinance passed on, as in the preceding section provided for, shall be valid to all intents and purposes as other ordinances duly and legally passed by the board of trustees, and any municipal bonded indebtedness created, bonds issued or franchises granted thereby, shall be in all respects valid and legal; *provided,* that if at any time within twenty days from the date of the first publication of the resolution in the preceding section, a petition signed by not less than fifty residents and taxpayers in said city, representing not less than

one-tenth of the taxable property of said city, according to the last previous assessment roll, shall be presented to the board of trustees, praying for a special election in said city upon the question of whether or not the proposed ordinance shall be passed, then it shall be the duty of the board of trustees to call a special election as soon as practicable; such election shall be held and conducted, as nearly as possible, in the same manner as elections for city officers. Notices of such election shall be given in some newspaper published in the city, which notice shall be printed underneath the resolution hereinbefore mentioned and refer to the same, and the notice and resolution shall be published together for a period of at least two weeks before such election shall be held. The board of trustees shall in due time make provision for holding such special election and the city clerk shall prepare, at the expense of the city, suitably printed stationery for use as ballots, which shall contain the words 'For the Ordinance' (stating briefly the nature thereof), and 'Against the Ordinance' (stating briefly the nature thereof). * * * " (Stats. Nev. 1907, p. 345.)

For some reason, perhaps best known to the board of city trustees, that body, in making provision for the payment of the pavement of the intersections of Carson Street, did not attempt to proceed under the provisions of the charter above set forth, but sought rather to proceed under the provisions of a general statute enacted by our legislature March 20, 1903, and which is entitled, "An act relating to the government of towns and cities, and limiting the tax rate thereof." Section 4 of the above-entitled act reads:

"SEC. 4. In case of great necessity or emergency the governing board of such town or city, by unanimous vote, by resolution reciting the character of such necessity or emergency, may authorize a temporary loan for the purpose of meeting such necessity or emergency, but such resolution shall not take effect until it has been approved by resolution adopted by the majority of the

state board of revenue, and the resolution of the state board of revenue shall be recorded in the minutes of such city or town." (Stats. Nev. 1903, p. 216; Rev. Laws, 978.)

By section 10 of the charter of the city, as amended in 1907, the board of trustees were authorized and empowered to do that with reference to the streets and alleys of the city which might appear to them to be a necessary improvement of the same. In cases where the money from the regular annual tax was inadequate or lacking, sections 33 and 34 of the charter, as amended by the act of 1907, specified in detail the ways whereby the expense of such improvement might be defrayed. Why the board of city trustees refused to proceed under the provisions of the charter of the city of which they were trustees is not made apparent by the record. That within the provisions of the charter of the city of Carson there was a plain and adequate way provided for the accomplishment of that improvement which the trustees deemed a necessity is made apparent by a simple reading of the provisions of the charter which we quote here.

The acts of the city trustees in attempting to take advantage of a general statute pertaining to towns and cities brings before us for consideration the peculiar wording of section 4 of that act, the section under which the city trustees in this instance sought to create an indebtedness against the municipal corporation of which they were the directors.

"In case of great necessity or emergency," says the statute, "the governing board of such town or city may authorize a temporary loan for the purpose of meeting such necessity or emergency."

We do not attempt to determine as to whether or not the paving of several blocks on a main street in the city is a necessity, nor is it necessary to decide here as to whether or not we may review the determination of the board of trustees as to the necessity of paving the

main street of the city. The city charter provides, in general terms, that the board of trustees may improve the streets of the city. The city charter specifies a working plan whereby the necessity, if it be such, may be provided for. In this respect, it requires only the initiative of the board of trustees; and if this initiative be not checked by the majority of the taxpayers, the object is effectually accomplished.

What we do assume to determine is: Was the necessity so imminent and pressing, so unusual, as to warrant the action of the city board in going round the working plan provided by their own charter and resorting to the provisions of a general statute, hence foreclosing the opportunity for popular expression contemplated by the charter on a matter of assuming the burden of unusual taxation? Was the necessity so great as to impress it with the force of a general statute enacted to relieve a financial condition growing out of some unusual circumstances? There have been many decisions rendered by the courts having before them the peculiar question of what constituted necessary improvements in matters pertaining to municipal corporations, and the question has been variously decided. But these decisions bear only remotely on the matter at bar. The constitution of the State of North Carolina provided by section 7, article 7, that:

"No county, city, town or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

The charter of the town of Washington, North Carolina, conferred general powers on the town commissioners as follows:

"They are hereby created a corporation and body politic, under the name and title of the 'Commissioners of the Town of Washington,' with full power to make

by-laws not inconsistent with the constitution of the state or of the United States; to contract and be contracted with, to sue and be sued, to plead and be impleaded, by that name and title; and they are hereby invested with all other powers and rights necessary or usually appertaining to municipal corporations."

The city board sought under these powers to purchase an electric-light plant to light the streets of the town of Washington. There, as here, the contention was put forth, and the same was supported by eminent authority, that nothing was more conducive to comfort, convenience, and safety of the dwellers and general public of cities and towns than well-lighted streets, and hence the matter sought to be accomplished was a necessity and the matter of paying for the plant was a necessary expense. The Supreme Court of North Carolina, in passing upon the matter, said:

"To draw the line of demarcation between what are and what are not necessary expenses to be borne by a municipal corporation would be attended with difficulty. * * * The claim of power upon the plea of necessity must stop somewhere. The restrictions contained in the constitution were not intended to be meaningless. If they had not been for a purpose, they would not have been put into the constitution." (*Mayo* v. *Town of Washington,* 122 N. C. 5, 29 S. E. 343, 40 L. R. A. 163.)

In addition, the court in that case, after reviewing the matter from a standpoint of the working plan afforded by the constitution for the accomplishment of matters necessary, made the significant assertion:

"If the people want it, why not get it in this constitutional way?"

So we say here, the words "great necessity or emergency," as used in the general statute, are words used advisedly in that statute, to indicate something greatly out of the ordinary; something which could not be adequately met by the usual machinery of government. But if the provisions of the charter afford a plain and

adequate means whereby the very thing sought to be accomplished by this emergency loan can be accomplished, why not bring about its accomplishment through the avenue afforded in the fundamental law of the city, its charter? Judge Dillon, in the fourth edition of his work on Municipal Corporations, vol. 1, at page 145, says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation not simply convenient, but indispensable."

It is clear to our mind that that power which the trustees of the city of Carson sought to exercise in this instance comes directly under the third subdivision as expressed by the above-quoted authority, namely, to pledge the credit of the municipal corporation for the accomplishment of a matter which, while it may be essential in the sense of being convenient, is not indispensable; at least, it is not so immediately indispensable as to require action other than that afforded by the methods provided in the charter itself. Section 4 of the general statute relating to the government of towns and cities, under which they seek to operate and pledge the credit of the municipality, was not, in our judgment, intended to be made use of in cases less than those presenting matters essential in the sense of being immediately indispensable. In our judgment it was not the legislative intent that this provision of a general statute should supersede or take the place of plain, adequate provisions of a city charter which contemplate the incurring of indebtedness or the pledging of the city's credit, when that necessity for which the indebtedness is to be incurred or the credit pledged is less than great in the sense of being imminent, urgent, indispensable. Where,

perchance, the method provided by the city charter for meeting a matter of necessity would be too slow or cumbersome to bring the essential results as speedily as the exigency of the occasion demanded, then section 4 of the general statute relating to the government of towns and cities might, with propriety, be resorted to. Many conditions might arise, and we deem it unnecessary to enumerate, where, by reason of great necessity or emergency, the time within which the several steps made necessary by the charter for the creating of a bonded indebtedness would bring the results too remote, in which event the temporary loan contemplated by section 4 of the general statute relating to the government of towns and cities might be resorted to. But in the very nature of things, it is made manifest that the paving of a city street, a matter more of comfort and convenience than of immediate, indispensable emergency, does not come within the class of necessities which would demand its accomplishment before the popular will of the taxpayers of the municipality could be expressed at an election upon the bond issue.

If the charter of the city of Carson failed to specifically provide a plain and adequate way by which any municipal improvement such as the paving of a main thoroughfare could be accomplished and paid for, then, indeed, the method provided by section 4 of the general statute relating to the government of towns and cities might afford an avenue of relief. But to say, in the face of specific provisions in a charter, which specific provisions afford an opportunity for an expression of the popular will of those who are to bear the burden of the indebtedness, that the provisions of a general statute should be resorted to and the opportunity for popular expression and sanction thereby cut off, would be to nullify one of the safeguards incorporated into the charter, wherein the power was retained in the people to say whether or not a matter of unusual expense, incurring unusual tax levy, should be created.

The action of the city board in attempting to pledge the credit of the city was, in this instance, an act in excess of authority. The necessity set forth in the resolution of the board of trustees was one which could, and should, have been met by and through the specific provisions of the charter of the city.

The injunction as prayed for in the court below should have issued.

The judgment of the lower court is reversed, and the case is remanded.

COLEMAN, J.: I concur.

NORCROSS, C. J., concurring:

I concur in the judgment and in the opinion in so far as it holds that the provisions of Rev. Laws, 978, are inapplicable as a means of providing for the payment of the cost of an improvement of the character described in the resolution adopted by the city trustees and approved by the state board of revenue, where, as in this case, the city charter prescribes an adequate method of accomplishing the same purpose. However advisable it may be to accomplish an improvement of the character in question, and however commendable may be the purpose of the city authorities in endeavoring to bring about such improvement, it is, nevertheless, one for which the charter of the city makes provisions. Section 978, Rev. Laws, which relates to the government of towns and cities, corresponds to Rev. Laws, 3831, which relates to the government of counties. The two acts were adopted at the same session of the legislature, have the same purpose, and are, in fact, companion statutes. Relative to the purpose of section 3831, which is the same as section 978, in the recent case of *Bank* v. *Nye County,* 38 Nev. 123, 134, 145 Pac. 932, we said:

"The act provides for a gradual reduction of the tax rate in the several counties of the state until a certain prescribed rate is reached, which should thereafter

·be the maximum rate. Boards of commissioners are required annually, prior to the first Monday in March, to make a budget of the amount estimated to be required to meet the expenses of conducting the public business of the county for the next ensuing year. Such boards are prohibited from allowing or contracting for any expenditure, unless the money for the payment thereof is in the treasury and especially set aside for such payment. * * * Recognizing that unforeseen necessities or emergencies might arise requiring the expenditure of additional money not provided for in the general tax levy, sections 6 and 7 were inserted in the act to make provision for meeting such necessities or emergencies. These provisions are therefore in harmony with the general purposes of the act."