STATE OF NEVADA; LEE BIRGE, State Director, Department of Agriculture; DUDLEY ZOLLER and ROBERT W. NICHOLS, Representatives, Directors or Coordinators of the Southern District of the Department of Agriculture, Appellants, *v.* REDMAN PETROLEUM CORP.; HUDSON OIL CO.; VEGAS MAIN OIL CO.; JAMES WHITE OIL CO.; CHAUNCEY COX dba FEARLESS FERRIS STINKER STATION; E. R. HERBSTS and L. G. HERBSTS dba HERBSTS OIL CO.; ROY HAIGH and REX HAIGH dba SAVE–U–MORE STATIONS, Respondents.

No. 4341

April 5, 1961

360 P.2d 842

*Roger D. Foley,* Attorney General, and *John A. Porter,* Deputy Attorney General, of Carson City,

*John F. Mendoza,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, of Las Vegas, for Appellants.

*Robert Callister,* of Las Vegas, for Respondents.

# OPINION

By the Court, BADT, C. J.:

This appeal tests the constitutionality of NRS 590.325 and 590.326, making it unlawful to offer gasoline or petroleum products for sale unless the seller companies conspicuously post on the individual gas pumps signs not less than 7 x 8 inches nor larger than 12 x 12 inches in size, stating the price per gallon, the taxes per gallon, and the trade name, prohibiting any other sign than as thus specified on, at, near, or about the premises, and making violations punishable by fine and imprisonment. Section 590.325 is set forth in full in the margin.[1] Section 590.326 is to like effect with reference to size and location of signs.

In the court below it appeared that respondents had been served with a notice or order from the Nevada

---

[1] "590.325   Signs, placards on retail gasoline pumps, other dispensing devices; specifications; contents; other signs prohibited; penalties.

"1.   Notwithstanding any other provision of law, no person, firm or corporation shall sell or offer for sale, at retail, any gasoline for use in internal combustion engines in motor vehicles, unless such seller posts and keeps conspicuously posted on the individual pump or other dispensing device from which such gasoline is sold or offered for sale a sign or placard which shall:

"(a) Be not less than 7 inches in height and 8 inches in width, nor larger than 12 inches in height and 12 inches in width.

"(b) State clearly and legibly in numbers of uniform size the selling price or prices per gallon of such gasoline so sold or offered for sale from such pump or other dispensing device.

"(c) State clearly and legibly in numbers of uniform size the total amount of taxes per gallon to be collected with the sale of such gasoline.

"(d) State clearly and legibly the trade name, brand, mark or symbol, if any, of such gasoline.

"2.   No sign or placard stating or referring directly or indirectly to the price or prices of gasoline, other than such signs or placards as mentioned in subsection 1, shall be posted or maintained on, at, near or about the premises on which such gasoline is so sold or offered for sale.

"3.   Any person violating any of the provisions of this section shall be punished as provided in NRS 590.330."

State Department of Agriculture ordering the removal of respondents' price signs within 48 hours. Respondents then sought a permanent injunction against the enforcement of such order and a temporary injunction pending the determination of the action and obtained ex parte a temporary restraining order. The case was tried on the motion for temporary injunction and the trial court held that the section violated constitutional limitations, and ordered a temporary injunction, following the taking of testimony which will be referred to later. This appeal followed.

Appellants' brief presents to the court "the most relevant cases" on the subject, citing 12 cases which have held similar statutes or ordinances unconstitutional and 6 cases sustaining such statutes or ordinances, and urges us to follow the latter and be guided by the presumption of their validity in the state's exercise of its police power. Respondents urge that we follow the cases admittedly stating the majority rule, striking down statutes and ordinances in all respects similar to the one in question.

We have concluded that the better law is stated in those cases striking down the statute and that the judgment of the court below must accordingly be affirmed.

The respondents are what are known as "independent oil companies." One of the officers of Redman Petroleum Corporation testified with reference to his own company and it was stipulated that such testimony might apply to all the respondent independent companies. Such testimony showed that the independent companies were in competition with other service stations—both other independent companies and major company service stations. He testified that his company displayed on its pumps 11 x 12 inch signs stating all the matters required by subparagraphs (a), (b), (c), and (d) of subsection 1 of NRS 590.325; that in addition, his company displayed a large sign located on the parkway containing letters approximately 30 inches high where the same information is posted; that it had signs in different places and larger in size and lettering from those displayed on the pumps themselves; that it always had available for sale gasoline products at the prices advertised and that the

larger signs were for the purpose of enabling the public to be able to read them; that the purpose of the larger price signs was to tell the public in an effectual way what the station had for sale, what it offered to the public so that the members of the traveling public could make a choice of where to buy their gasoline; that such was the station's only means of advertising the product offered for sale; that it was essential to his company's business thus to advertise in order to compete with the larger, major oil companies; that his company had a very substantial investment in its station and a substantial investment in the price signs themselves; that it had maintained such signs for approximately 10 years; that such signs contained no matter of deceit, fraud, or misrepresentation; that the smaller signs as limited by the statute would be totally ineffective in that the public would never see them; that in order to see the smaller sign on the pump as required by the statute it would be necessary for a driver to drive into the station and up to the pump to read it; that, with respect to the stating of prices and other matters, the larger signs were the same as the smaller signs.

No question of aesthetics is involved in this case, nor any contention made that any one of the respondents is in league with any other respondent or any other person to restrain trade or to create a monopoly, or that a "price-war" was involved.

We may note at this point other provisions of the statute which are aimed directly at preventing any false, misleading, or fraudulent advertising. It is unlawful for any person selling gasoline products to represent them to be the products of any other than the true dealer, manufacturer, or producer (NRS 590.030); or to display a sign describing a brand or trade name thereof not actually offered for sale on the premises, or to make, through advertising, any statement concerning the product known to be untrue or misleading (590.050); or to display any such products for sale unless the actual price per gallon, including taxes, is also there shown

(590.170) ; or to place his advertising signs in mis-
leading position as regards other advertising (590.280) ;
or to add words distorting the meaning of his advertise-
ment (590.290). The purpose of these provisions may be
readily understood.

Appellants refer us to a number of cases[2] which,
although distinguishable in some respects, upheld the
minority rule supporting such legislation. To such extent
as they are in conflict with the majority rule hereinafter
discussed, we reject these authorities.

Appellants, in discussing State v. Hobson, 46 Del. 381,
83 A.2d 846, in which the regulatory statute similar to
ours was held unconstitutional, find comfort in the indi-
cation given by the court that a restriction of size of
signs might be constitutional legislative action for aes-
thetic reasons and for the effect on competition and in
connection with price control. Appellants then say:
"This * * * is precisely the situation in the instant
case also."

None of these objectives appears to be the objective
sought by the legislation in question here. At least this
would appear from the arguments made by appellants
in the district court. They argued there: "[As] the
State of Nevada is, to a greater extent than most states,
substantially dependent for its economic welfare upon
tourism, there can be no question that disruption and
serious damage would result from the indiscriminate
display of signs. Moreover, the restrictive regulation
relating to sizes, location and number of signs, as well
as their contents, may also properly and legally be justi-
fied on aesthetic grounds * * *. [Such signs] are

[2]People v. Arlen Service Stations, Inc., 284 N.Y. 340, 31 N.E.2d
184; Merit Oil Co. v. Director of the Division on the Necessaries
of Life, 319 Mass. 301, 65 N.E.2d 529; Breard v. City of Alexandria,
341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233; Slome v. Chief of Police,
304 Mass. 187, 23 N.E.2d 133; Sun Oil Co. v. Director of the Division
on the Necessaries of Life, 340 Mass. 235, 163 N.E.2d 276; State v.
Woitha, 227 Iowa 1, 287 N.W. 99, 123 A.L.R. 884; Serve Yourself
Gasoline Stations Assn. v. Brock, 39 Cal.2d 813, 249 P.2d 545
(appeal denied, 345 U.S. 980, 73 S.Ct. 1130, 97 L.Ed. 1394).

generally disruptive of the economic stability of such retail business operations. * * * [T]hey result in many economic abuses, such as perpetration of fraud and deceit on the consumer public through 'bait advertising,' and 'price wars' that result in serious losses and damage not only to those directly engaged in such business operations, but also the community at large." This is not factual. It is appellants' argument. It cannot be said to consist of presumptive factual findings by the legislature. There was no price war. There was no bait advertising. There was no question of aesthetics. If a sign 12 inches x 12 inches, defined as legal in the statute, would not interfere with the surrounding beauty, it is not realistic to conclude that a legislative investigation could result in the finding that a sign 13 inches x 13 inches would destroy the beauty of the landscape.

Although defendants denied plaintiffs' allegations that the prices placed by them on their premises on larger signs and in different places than those specified in the section were honest and true prices, including tax, total price charged, etc., all in conformity with the statute, proof of such allegations was made and accepted by the court and no proof offered to the contrary.

Under these conditions we find no justification in departing from the majority rule that such legislation bears no reasonable relationship to the objective sought—even in such broad terms as "the general welfare of the community."

In the margin we list the cases cited by appellants as concededly reciting the majority rule supporting the foregoing statement.[3]

---

[3]Sears, Roebuck & Co. v. City of New Orleans, 238 La. 936, 117 So.2d 64; City of Lake Charles v. Hasha, 238 La. 636, 116 So.2d 277; State ex rel. Walters v. Blackburn, Fla. 1958, 104 So.2d 19; State v. Union Oil Company of Maine, 151 Me. 438, 120 A.2d 708; Town of Miami Springs v. Scoville, Fla. 1955, 81 So.2d 188; State v. Guyette, 81 R.I. 281, 102 A.2d 446; Gambone v. Commonwealth, 375 Pa. 547, 101 A.2d 634; State v. Hobson, 7 Terry 381, 46 Del. 381, 83 A.2d 846; Levy v. City of Pontiac, 331 Mich. 100, 49 N.W.2d 80; Alabama Independent Service Station Assn. v. McDowell, 242 Ala. 424, 6 So.2d 502; State v. Miller, 126 Conn. 373, 12 A.2d 192; Regal Oil Co. v. State, 123 N.J.L. 456, 10 A.2d 495.

Rather than discuss these cases, other than to note that they are directly in point to the effect that they violate the Fourteenth Amendment (advertising one's business being conceded to be a property right), we refer to the position taken by this court in Viale v. Foley, 76 Nev. 149, 350 P.2d 721, 723. There we upheld our statute prohibiting outdoor advertising of motel rates. In this regard it is interesting to note the reaction of the learned trial judge to the present case as presented to him.[4] However, we refused to recognize the analogy between the motel statute and the gasoline sale statute. We said: "Even in cases where there is no total prohibition of advertising, the regulation will not be sustained if it is arbitrary or unreasonable, and is not reasonably related to the end sought to be achieved which in this case is the protection of the traveling public. It was because of this rule that legislation limiting outside price advertising of gasoline to small placards posted on gas pumps has been held invalid. Gambone v. Commonwealth, 375 Pa. 547, 101 A.2d 634. The purpose of the regulation in that case was to prevent fraud and deception, and it is apparent that the public could be better protected by signs in excess of a certain prescribed size. Accord, State v.

---

[4]He said: "Until and unless the service station industry engages in false or misleading advertising, number one, or in the alternative so grossly abuses the right to advertise as to materially affect the aesthetic senses of our community the operators of the service stations have a right to sell goods in any honest way or manner they see fit.

"In this instance by examination of the one picture already examined by the Court, the service station in question did not do anything but advertise its product. There is no showing that the contents of the signs themselves were false or intended to mislead. The 'save-yourself' is like an ordinary salesman trying to sell his products. It is up to the traveling public to determine whether they can buy a gallon of gas at one price at that station or at a higher or lower price at another station.

"In the motel situation the use of figures on the signs and the gimmicks used induced the traveling tourist after a hot day in the desert to stop only to find that the price as advertised did not exist, or was false; that the room as advertised did not exist; that the language used on the signboards did not mean in fact what it was intended to mean and did not say what was ordinarily intended to say; that was false and fraudulent; that was subject to regulation."

Guyette, 81 R.I. 281, 102 A.2d 446. The contention of appellants that an analogy may be drawn from such cases is without merit."

Gambone v. Commonwealth, 375 Pa. 547, 101 A.2d 634, 637, thus cited by us with approval, is one of the cases supporting the majority rule. In that case Chief Justice Horace Stern, speaking for the Supreme Court of Pennsylvania, said: "Defendants state that the object is to prevent fraud and deception, it being claimed that some dealers endeavor to attract passing motorists by misleading advertisements calculated to make them believe that the gasoline was being sold at a lower price than was actually the case. It is quite impossible, however, to see how the size of the sign would have any relevancy to the perpetration of such fraud; on the contrary, it would seem that the larger the sign the more difficult it would be for the dealer to deceive the purchaser. It would also seem that, to prevent such fraud, the prohibition should be directed, not against the size of the sign, but against the placing thereon of any false statements concerning the price; incidentally such a provision already exists in the Penal Code  *  *  *."

Although our approval in Viale v. Foley, supra, of Gambone v. Commonwealth, supra, was dictum, we now accept it as correctly stating the law applicable to this case. It in turn is thoroughly supported by the cases cited in the text of the opinion and in the footnotes. We hold that, as a matter of law, the legislation in question is not reasonably related to the end sought to be achieved, and is violative of the Fourteenth Amendment to the federal constitution and section 8 of article 1 of the state constitution.

The order granting a temporary injunction is affirmed.

PIKE and MCNAMEE, JJ., concur.