HUMBLE OIL AND REFINING COMPANY,
Appellant,

v.

The CITY OF GEORGETOWN et al.,
Appellees.

No. 11586.

Court of Civil Appeals of Texas.

Austin.

May 8, 1968.

Wilson, Kendall, Koch & Randle, Will Wilson, Austin, Frank L. Heard, Jr., Houston, for appellant.

Joe B. McMaster, City Atty., William S. Lott, Georgetown, for appellees.

O'QUINN, Justice.

This lawsuit tests the validity of a city ordinance regulating the storage and delivery of gasoline within the corporate limits of Georgetown.

Humble Oil and Refining Company filed suit to compel the City of Georgetown to issue a building permit for construction of a gasoline service station. Georgetown authorities had refused to issue the permit on the ground that the application revealed an intention to install two underground storage tanks having a capacity of 8,000 gallons and one tank with a capacity of 6,000 gallons, in violation of Section 5 of the city ordinance limiting the size of such tanks in retail filling stations to capacity of 2,000 gallons.

Humble by amended pleadings also sought a declaratory judgment holding invalid Section 5A of the ordinance restricting to 1,400 gallons the capacity of trucks delivering gasoline to retail stations.

Humble challenged validity of Sections 5 and 5A on the basis that the restrictive provisions of these sections denied Humble due process and equal protection of law under section 1 of the Fourteenth Amendment of the United States Constitution and under Article I, section 19, and Article I, section 3, of the Texas Constitution, Vernon's Ann.Tex.Const. Humble contended that neither section of the ordinance reasonably forwarded or advanced public safety but on the contrary each section adversely affected public safety by increasing the hazard.

The City of Georgetown contended that Sections 5 and 5A of the ordinance were each a valid exercise of the police power in that each bore a reasonable relation to public safety.

The cause was tried before the court without intervention of a jury. The trial court ruled that Section 5 of the ordinance restricting the capacity of underground tanks at retail stations was unconstitutional and void. The court held that Section 5A of the ordinance limiting the capacity of tank trucks unloading gasoline at retail stations was valid and constitutional.

The trial court granted application for mandamus to require the city to issue a building permit, but refused to declare that Section 5A was void and unconstitutional.

Humble has perfected appeal challenging that portion of the trial court's judgment declaring Section 5A a valid and constitutional exercise of police power.

The City of Georgetown by cross-points on appeal challenges action of the trial court in holding invalid and unconstitutional Section 5 of the ordinance limiting the size of underground storage tanks at retail stations. Humble has filed motion to strike that portion of the city's brief in which these points are presented in this Court.

Both parties excepted to the trial court's judgment and gave notice of appeal. Humble filed an appeal bond in which it indicated its appeal was limited to challenge of the trial court's action in upholding validity of Section 5A. The City of Georgetown did not file a brief as appellant, but raised its points of error, as indicated, by cross-points in its brief as appellee in this cause.

The trial court's judgment was severable, and Humble in its cost bond gave notice of appeal only from that portion of the judgment declaring Section 5A valid. The record does not disclose that Humble complied with paragraph (c) of Rule 353, Texas Rules of Civil Procedure, by giving sepa-

rate written notice of the limited scope of its appeal. Rule 353 requires an appellant to serve separate written notice on the adverse party and file the notice within fifteen days after judgment or order overruling motion for new trial.

Paragraph (c) was placed in Rule 353 in 1962 after the Supreme Court in 1958 decided Connell Construction Co. v. Phil Dor Plaza Corp., 158 Tex. 262, 310 S.W.2d 311. The amended rule was construed in Harms Marine Service, Inc. v. Swiere, 411 S.W.2d 602 (Tex.Civ.App., Beaumont, writ ref., n. r.e.) in which the court held the appellant had complied with the rule in giving notice of limited appeal. In Gerst v. Guardian Savings and Loan Assn., 425 S.W.2d 382 (Tex.Civ.App., Austin, writ applied for) this Court held that notice had not been given as required by Rule 353.

■ The cross-points presented by the City of Georgetown are properly before this Court, and the motion to strike is overruled.

We affirm that portion of the judgment of the trial court granting application for mandamus requiring city authorities to issue a building permit to Humble and finding Section 5 of the ordinance unconstitutional insofar as it limited the capacity or size of underground storage tanks at retail stations. We reverse and render the judgment of the court declaring Section 5A of the ordinance constitutional and a reasonable and valid exercise of police power in restricting the capacity of tank trucks delivering gasoline to retail stations.

We dispose first of the questions related to the provisions of Section 5A of the ordinance restricting the capacity of trucks delivering gasoline to retail stations.

Section 5A is quoted in full:

"That no truck hauling gasoline, that has a carrying capacity of over 1,400 gallons, shall hereafter be permitted to deliver gasoline, therefrom to any filling station, private plant, or to any tank used by any filling station or private plant distributing gasoline therefrom within said City. That each truck used for, or by which gasoline or other volatile or explosive liquids are transported, or are delivered, within said City, shall carry gasoline, or other volatile or other explosive liquids, in a tank thereon suitable for such purpose; and that such tanks shall be made of not less than twelve gauge galvanize steel; or at least one-fourth inch black open hearth tank steel; and that such tanks shall be equipped with outlet faucets or the anti-drip approved selfclosing type; and also must be equipped with automatic check valves for safety in the event of mechanical injury to the outlet faucet, and said tank and equipment shall have been approved by and shall bear the label of approval of the National Board of Fire Underwriters."

Humble recognizes its burden of proof, in seeking a declaratory judgment that Section 5A is unconstitutional, to show that the restriction against delivery of gasoline to retail stations from tank trucks having capacity in excess of 1,400 gallons has no reasonable basis related to safety or that there is no reasonable basis for the classes created by the ordinance.

Humble contends, we think correctly, that it is a question of law whether there is a reasonable basis for the ordinance, or whether the ordinance reasonably promotes safety.

The Supreme Court of Texas in 1905 observed that in passing on the reasonableness of an ordinance, "It is doubtless true that the question is one of law" for the courts to decide. Houston and T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 654, col. 2, 70 L.R.A. 850. The Supreme Court in this connection said:

"The reasonableness or unreasonableness of many ordinances will appear on their faces, and the court may, upon mere inspection, pronounce them to be valid or invalid. In others the question may de-

pend upon their operation upon particular persons or conditions of fact which cannot be known to the court until made to appear by evidence. Their effect may be just and reasonable in general, but in particular instances may be arbitrary and oppressive to the extent of invading fundamental rights." 84 S.W. 648, 654, col. 2.

The evidence in this case discloses two methods for delivery of gasoline from large terminals located in Austin to retail filling stations in Georgetown.

Under one method, gasoline is transported in 8,000 gallon tank trucks into and through Georgetown and transferred to large overhead storage tanks at bulk plants. From the bulk storage the gasoline is later transferred to trucks having a capacity of 1,400 gallons or less and then transported to various retail stations in Georgetown and delivered to the filling station storage tanks.

By the other method, gasoline would be transported from the Austin terminals in 8,000 gallon tank trucks directly to such retail filling stations as are built to take such loads and delivered directly into the filling station storage tanks.

Humble contends that "The ordinance involved in this suit was designed to perpetuate the first method under which the local bulk agent receives a commission on the gasoline delivered by him from his bulk plant to the filling station." Humble insists that " * * * the city council cannot validly use the police power to regulate economic aspects of the gasoline distribution system so as to favor local bulk agents, unless, under the police power, the ordinance does in fact accomplish an advancement of the public safety."

The City of Georgetown takes the position that "deliveries in the 8,000 gallon tank trucks could be made to stations which are *not* built to take such large loads if appellant's contention prevails and the ordinance is voided." The city also challenges Humble's contention that the ordinance "was designed to perpetuate" the commission method, and denies that the council used its police power to favor local commission agents.

Humble contends that Section 5A of the ordinance relates only to prohibition of the activity of unloading gasoline from the truck to the retail station storage tanks, an activity carried on entirely on the filling station property. Humble urges that the prohibited activity, unloading gasoline from a truck having a capacity in excess of 8,000 gallons to the retail storage tanks, is not reasonably related to enhancing safety but is in fact detrimental to safety.

It was shown at the trial that in similar situations, deliveries proposed by Humble which are prohibited under Section 5A of the ordinance, resulted in savings of five eighths to one and one fourth cents per gallon. Humble asserts that, "As delivery of gasoline to the filling stations from trucks having a capacity in excess of 1,400 gallons would be economically advantageous and is not disadvantageous from the standpoint of safety, the ordinance denies Humble due process of law."

Humble maintains that Section 5A does not purport to prohibit or regulate the activity of trucks on the streets and public ways of Georgetown. We find nothing in the ordinance prescribing routes or restricting the capacity of tank trucks hauling gasoline over the public streets and alleys. Nor does the ordinance prescribe the location of bulk plants for overhead storage of gasoline. But under Section 5A a "truck hauling gasoline, that has a carrying capacity of over 1,400 gallons" is not "permitted to deliver gasoline, therefrom to any filling station * * *."

Humble urges that " * * * compliance with any ordinance which would prohibit trucks having a capacity in excess of 1,400 gallons from traveling on the streets * * of Georgetown when their destination is a retail filling station would necessarily entail a greater exposure of the gasoline

and equipment to any hazards of traffic than would be true were direct deliveries made to Humble's proposed service station in tank trucks having a capacity in excess of 1,400 gallons. The additional exposure which would necessarily result from operating in compliance with such an ordinance would adversely affect safety."

It was shown at the trial that the proposed Humble service station would be located on Interstate Highway 35, northwest of the main business and residential areas of Georgetown. Tank trucks driven from the Austin terminal would enter and leave Georgetown, in making deliveries to the retail station, along Highway 35 and without traveling streets in the downtown section or in the area of town in which bulk stations are located.

Humble attacks the classification aspect of Section 5A by its contention that " * * the ordinance restricting the capacity of transport trucks making deliveries to retail filling stations and leaving unrestricted the capacity of trucks making deliveries to bulk stations or public facilities creates a classification which has no reasonable relation to safety, requires a greater expenditure in servicing the retail station, and denies to the operator of such retail service station equal protection of the law as compared to the bulk station operator."

The record of this case is replete with evidence introduced by the city concerning safety or hazard of operating gasoline tank trucks on streets and highways. The ordinance in question obviously is not designed or intended to regulate the operation of gasoline tank trucks on the streets and alleys of Georgetown. Under provisions of this ordinance a loaded 8,000 gallon gasoline tank truck may travel over any street or alley in Georgetown and may park on any street or in any retail service station without being in violation of the ordinance. But under Section 5A the driver of a tank truck with capacity in excess of 1,400 gallons would violate the ordinance if, after traveling the public streets and while lawfully parked at a retail station, he placed the contents of the truck in the underground storage tanks of the station.

The evidence shows that the ordinance has been consistently interpreted in practice in accordance with the construction we have placed on the ordinance. In traveling through Georgetown, or in hauling gasoline to the bulk stations, tank trucks with a capacity of 8,000 gallons customarily use streets through the main business and residential sections of Georgetown adjacent to the courthouse square.

We do not believe that evidence concerning hazards incident to the movement of large transport gasoline trucks on streets and highways has any relation to safety or hazards involved in discharging gasoline from such trucks parked at the fill pipe of a retail service station. It is only this activity, the discharge of gasoline from the truck into the station storage, that Section 5A restricts or regulates.

The city argues that the larger transport trucks, loaded with gasoline and traveling the streets toward a retail service station, if involved in a traffic accident, would spill more gasoline and cause a bigger fire than a smaller transport truck carrying fewer gallons of gasoline. While this is manifestly true, it is equally evident that the same large transport truck being driven through the streets toward a bulk storage plant if overturned in a traffic accident would spill the same quantity of gasoline as the transport scheduled to deliver its load at a retail station instead of a bulk plant.

Section 5A makes no distinction between the two large transports while on the streets. The distinction under the ordinance is made only when each truck reaches its destination. The truck that places its load in an underground storage tank in a retail station violates the ordinance. The truck that delivers its load to an overhead bulk storage tank, so that the gasoline can later be taken around town by smaller

trucks and delivered to the service stations, has not violated the ordinance.

▪ Before this distinction imposed by the ordinance can be sustained as a valid regulation, we must find that the difference is reasonably related to the promotion of public safety. When it clearly and manifestly appears that the ordinance is unnecessary and unreasonable, the courts have the undoubted right to declare the ordinance void. Houston and T. C. Ry. Co. v. City of Dallas, supra.

The test is whether there is any basis for the classification which could have seemed reasonable to the city council. We must consider whether there was any reasonable basis for applying the restrictive provisions to trucks unloading at retail stations to underground tanks and not to trucks unloading at wholesale plants to overhead storage tanks. San Antonio Retail Grocers v. Lafferty, 156 Tex. 574, 297 S.W.2d 813, 815, col. 2.

We find no evidence in the record that any greater hazard would be occasioned by delivery of gasoline to the proposed filling station tanks from a truck with capacity in excess of 1,400 gallons than would be caused by delivery from a truck having a carrying capacity of 1,400 gallons or less.

The record shows that the city took the position during the trial of this cause that Section 5A was reasonably related to safety because of the possibility that a traffic accident might cause a substantial rupture of the tanks of a large transport truck and allow the entire contents to escape quickly. It was the contention that if this happened a larger fire might result than would be occasioned by an accident that ruptured the tanks of a small truck.

The only evidence we find that was related to the possible hazard resulting from a major rupture of tanks on a gasoline truck involved instances of particular ruptures caused by accidents on a street or highway. The evidence reveals that there was no known instance of a rupture of a tank on a gasoline truck, whether large or small, occurring on a filling station site, or during the process of unloading gasoline from the tank truck to the underground station storage.

We find nothing in the evidence offering a reasonable basis for making a distinction in the ordinance between the unloading of gasoline from large trucks at retail sites and unloading from large trucks at wholesale plants. The evidence as to accidents on streets and highways is not helpful because such an accident, we believe, is not more likely to happen to a truck being driven to a retail station than to a truck the same size being driven to a wholesale plant.

The evidence was undisputed that there is less probability of rupture of tanks on 8,000 gallon transport trucks of the type used in Georgetown than on the smaller trucks because of the greater wall thickness on the large transport tanks. Specifically, the testimony was that to rupture the tanks on the larger transport would require an impact two and one half times greater than the force required to rupture the smaller tanks and produce a gash the same size. The witness who qualified as an experienced expert in giving such testimony concluded that, "The transport truck of the larger capacity is vaster [vastly] safer in the over-all operation as I have described here in various ways."

We do not find it disputed in the record that delivery of gasoline from an 8,000 gallon transport truck to the underground storage of a retail station presents less hazard generally than delivery from the smaller tank truck. Testimony introduced was that fewer connections are required in making delivery from large transport trucks and therefore fewer opportunities for human error. The flow time involved is less through the large hose of one large transport than through the smaller hose of the several small transports necessary to deliver the same quantity of gasoline. The large transports are equipped with four-

inch discharge lines. The small transports, with capacity of 1,400 gallons or less, have lines one and one half to two inches in diameter. The large transports discharge by gravity flow into underground storage at a rate in excess of 400 gallons per minute. The rate of discharge from the small transports is "somewhere around 40 to 50 gallons per minute."

Qualified experts testified that the safest procedure that can be followed in handling inflammable liquids such as gasoline is to handle it the minimum number of times. To supply a retail service station with its monthly requirement of gasoline, if delivered by small transports of 1,400 gallons capacity or less, would involve "many more times connecting and disconnecting" discharge lines than in the case of large transports. The large transport could supply a retail station requiring 24,000 gallons per month in not to exceed three visits, "whereas the 1,400-gallon unit would have to be on that service station site somewhere between five and six times as many times, or somewhere around eighteen to twenty times in that month."

Expert witnesses offered by both parties were in agreement that whatever hazard is incident to handling gasoline generally is attributable to human error because the physical properties of gasoline are well known and if properly handled, resulting damage to life or property will be negligible. The hazard in handling gasoline in any quantity is directly related to the extent of exposure to human error. The evidence shows, we think clearly and convincingly, that under the requirements of Section 5A of the ordinance, gasoline introduced into Georgetown to be sold from retail service stations will be subjected to increased exposure to human error in several ways. In addition, the mileage required for delivery of gasoline under the ordinance over the streets of Georgetown is about three times greater than would be needed to make deliveries by larger transports.

It was shown without contradiction in the trial court that delivery of gasoline by gravity flow to underground tanks is safer than delivery by pumping into overhead, or surface storage tanks. All gasoline delivered in Georgetown to retail stations, whether by large or small transports, would be by gravity flow. Gasoline delivered from transports to the bulk storage tanks is by pumping, whether into overhead tanks or tanks located on the ground. It was shown that delivery by pumping is more hazardous because of pressure in the discharge lines that is not exerted on the lines during gravity flow.

In Ex parte Rodgers, 371 S.W.2d 570 (Tex.Cr.App.1963) an ordinance of the City of Ballinger prohibiting delivery of gasoline to a retail station from a truck containing more than 1,500 gallons was held void by the Court of Criminal Appeals. We regard the case as being in point, perhaps controlling, on the question of validity. The main difference between the Ballinger ordinance and the Georgetown restriction is that the size or capacity of the transport is not regulated by the Ballinger regulations, although at the time of delivery the amount of gasoline on the truck is limited to 1,500 gallons. The practical result is the same in restricting the act of delivery, and we are unable to see any substantial difference with respect to prevention of fire hazard.

The Ballinger ordinance sought to create a classification and prohibit by this classification the delivery to a retail station of more than 1,500 gallons of gasoline on any single occasion. The Georgetown ordinance likewise attempts by limiting the size of the transport to accomplish the end which the Court of Criminal Appeals held to be unreasonable.

 The Georgetown ordinance makes it a penal offense to violate the regulations imposed, as did the Ballinger ordinance. In following the policy that the proper administration of justice demands that harmony exist in the construction of

statutes criminal in their nature, it is our duty not to refuse to follow the decision in Ex parte Rodgers, supra, but to follow the ruling of the Court of Criminal Appeals. Shrader v. Ritchey, 158 Tex. 154, 309 S. W.2d 812. Where the civil courts have first construed a statute, the Court of Criminal Appeals will adopt such construction. Jernigan v. State, 166 Tex.Cr.R. 302, 313 S.W.2d 309. Statutes and ordinances are construed by the same rules. Mills v. Brown, 159 Tex. 110, 316 S.W.2d 720. The policy of harmony in construction, as between the civil and criminal courts, is reasonably applicable both to statutes and ordinances.

Similar ordinances have been before the courts of other jurisdictions and have been held void for want of a reasonable basis for the legislative choice made by the city council. McCoy v. Town of York, 193 S. C. 390, 8 S.E.2d 905; Standard Oil Company v. City of Gadsden, 263 F.Supp. 502 (D.C.1967); Clark Oil and Refining Corp. v. City of Tomah, 30 Wis.2d 547, 141 N. W.2d 299.

The Supreme Court of Wisconsin in 1966 considered and held void an ordinance prohibiting transfer of gasoline from trucks of more than 1,500-gallon capacity.

In the Wisconsin case, as in the case at bar, the city relied upon opinion testimony of a fire chief "that deliveries in 8,000 gallon trucks are more hazardous than deliveries in 1,500 [1,400] gallon vehicles * *" In the case under appeal the official testified that the Georgetown fire department was not equipped to fight an 8,000 gallon fire. But, as we have observed, and as the Wisconsin court observed, such "comments are directed to possibilities of danger while the larger truck is being driven."

Yet the Tomah ordinance and the Georgetown ordinance each "concerns itself only with prohibiting delivery. It places no restriction on trucks driving through Tomah [Georgetown] or even in Tomah [Georgetown] if they are headed for a bulk tank * * *" 141 N.W.2d 299, 303, col. 1.

The opinion of the fire officials was limited to that part of the hazard created by the moving vehicles destined to make deliveries of gasoline to local retail stations.

It is undisputed that it is not the gasoline itself that burns, but the gasoline vapor. The larger transports are equipped with safety devices not present on the smaller vehicles providing airtight connection between the truck and the underground tank to prevent escape of vapor. An automatic valve in the discharge line prevents overflow of the underground tank and thus avoids spillage that might otherwise result from over filling. The Georgetown ordinance, as was the case in the Tomah ordinance, would actually increase fire hazard under the facts of this case.

We recognize that much must be left to the judgment and discretion of the city council. But we feel that there is a clear and manifest want of necessity for Section 5A as a measure for the protection of life and property. Under such facts a court is justified in setting aside the action of the council.

◼ We hold that the trial court erred in holding Section 5A valid and constitutional, and we find Section 5A void as an unreasonable exercise of the police power and in violation of constitutional prohibitions against such use of police power insofar as Section 5A limits the capacity of trucks hauling and delivering gasoline to retail filling stations.

The City of Georgetown by its cross-points of error urges reversal of the trial court's action in holding invalid and unconstitutional Section 5 of the ordinance limiting the size of underground storage tanks in retail gasoline service stations to a maximum of 2,000 gallons.

Section 5 of the ordinance reads as follows:

"Storage tanks and pumps regulated. Only underground tanks shall be used

for the storage of gasoline at filling stations, and the said tanks and appliances shall be placed entirely within the property lines of the premises. That no tank shall be installed at any retail filling station or private plant with a capacity greater than 2,000 (Two Thousand) Gallons; and only one tank shall be permitted for each pump in service. That the total combined capacity of all of the tanks at any one retail filling station shall not exceed 5,000 (Five Thousand) Gallons and combined capacity not to exceed 2,000 gallons at any private plant. All of such tanks shall be labeled showing Underwriters Laboratories Approved Tank. Gasoline shall be drawn from underground storage tanks only through openings in the top thereof and only by means of pumps, bearing the approval of the National Board of Underwriters. All such pumps and apparatus shall be placed inside the property lines, and so placed that it will be impractical to serve motor vehicles therefrom while such vehicles are standing on any part of any sidewalk, street, or alley of said City. No pump shall be used other than one that has been approved by the Underwriters Laboratories, Inc. for such use. All such pumps shall be tested, examined, approved and sealed by the City Plumbing Inspector of the City of Georgetown, Texas, before being placed in service."

Evidence clearly established that the greatest danger of fire is presented when gasoline is being transferred from the transport to the underground storage. Once the gasoline is deposited underground it no longer creates a significant hazard. The larger tanks have thicker walls and are less likely to acquire leaks by corrosion or electrolysis. Gasoline will escape by leakage from a small tank or a large tank at approximately the same rate if the holes through which the gasoline is escaping are the same size. The rate of this flow is controlled by the height of the column of liquid immediately above the hole, and there is usually not much difference between the height of underground gasoline tanks, whether large or small.

The restrictions of Section 5 have a direct tendency to increase the number of occasions when it is necessary to refill the underground tanks, thus increasing the number of occasions when the greatest fire hazard is presented. The more frequent filling necessitated by the smaller storage capacity also has a tendency to increase the number of gasoline transport trucks exposed to the hazard of traffic accidents on the streets of Georgetown.

The evidence does not show any real fire hazards that would be increased if the restrictions of Section 5 were removed and operators such as Humble were permitted to install underground storage tanks of larger capacity. There must be a real and substantial connection between the provisions of a police regulation and its purpose. To be valid as a legislative exercise of police power the ordinance must be clearly and reasonably related to the end in view.

■ We are of the opinion that the evidence established that the restrictions on the size of underground storage tanks imposed by Section 5 are not reasonably calculated to promote the public safety or the public welfare by reducing the hazards of fire or otherwise. We think the practical effect of these restrictions is just the opposite. The legislation is not a fair exercise of the power of the council, but amounts to an undoubted abuse of discretion. We are of the opinion that the trial court correctly held Section 5 void and unconstitutional and properly directed issuance of mandamus to compel the granting of a building permit to Humble.

In view of the disposition we make of this cause, we do not pass on the points of error assigned by Humble with respect to evidentiary matters.

■ The City of Georgetown assigns error that the trial court incorrectly

**414**

refused the city's request for a jury. We overrule this point, in view of our conclusion that under the facts of this case the question of validity of the ordinance is one of law for the court to decide.

The judgment of the trial court is affirmed in part and in part reversed and rendered. We affirm that part of the judgment by which the trial court held Section 5 of the ordinance void and unconstitutional insofar as Section 5 limits and controls the capacity or size of underground storage tanks at retail service stations, and ordered issuance of mandamus directing the City of Georgetown to grant a building permit for a service station to Humble Oil and Refining Company. We reverse the other provisions of the judgment and render judgment that Section 5A of the ordinance is void and unconstitutional insofar as Section 5A limits and restricts the capacity of trucks hauling and delivering gasoline to retail service stations.

Affirmed in part and in part reversed and rendered.