## In Re the Application of AL MARTIN for a Writ of Habeas Corpus.

No. 6533

December 14, 1972          504 P.2d 14

*Vargas, Bartlett & Dixon,* of Reno, for Petitioner.

*Robert List,* Attorney General, and *Robert O. Vaughan,* of Elko, City Attorney, for Respondent, The City of Wells.

## OPINION

By the Court, THOMPSON, J.:

Emergency Ordinances Nos. 62 and 81 of the City of Wells prohibit the delivery of gasoline, within limited areas of the city, into underground storage tanks of service stations and garages from a truck or truckwagon vehicle having a capacity in excess of 2000 gallons plus ten percent tolerance. The ordinances do not apply to aboveground bulk storage tanks. Purportedly, they were enacted to decrease the danger of fire and thus promote public safety. The petitioner was arrested for violating the ordinances and, by this original proceeding for a writ of habeas corpus, seeks to be discharged from restraint. It is his contention that the prohibitions of the ordinances deny due process of law and equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution, and of the corresponding due process clause of our State

Constitution, art. 1, § 8. The selected remedy is appropriate. In re Laiolo, 83 Nev. 186, 426 P.2d 726 (1967); In re Philipie, 82 Nev. 215, 414 P.2d 949 (1966); NRS 34.500(4).[1] Evidence was presented to a district court and the entire record has been certified to this court for decision.

1. The petitioner was arrested because he delivered 9300 gallons of gas from a tanker trailer having a capacity of 9500 gallons, to an underground storage tank of a service station in the City of Wells. This single delivery at the station was accomplished in about forty minutes by the petitioner alone. To deliver equal gallonage in compliance with the ordinances would require multiple deliveries from a smaller truck, greater time, more personnel, and increased cost.

The following conclusions are solidly established by the record. First, the greatest danger of spillage and possible fire is presented when the gasoline is being transferred from the tank truck to the storage tank. Second, the danger of spillage from unloading a truck having a capacity in excess of 2200 gallons is no greater than the danger encountered in unloading gasoline from a truck having a capacity of less than 2200 gallons. Third, the danger of spillage and possible fire from unloading gasoline increases in direct proportion to the number of times the gasoline is handled at the transfer point, that is, from the truck to the storage tank. In short, it is safer to deliver a given amount of gasoline with one load and dump than with several. Once the gasoline is deposited underground, a significant hazard no longer exists. The safety objective is to decrease the number of occasions needed to refill underground tanks. Fourth, the delivery of gasoline by gravity flow to underground tanks is safer than delivery by pumping to overhead or surface storage tanks. These conclusions are not substantially denied by any evidence offered by the City.

The City does urge, however, that the ordinances are constitutional. The City points to the fact that the aboveground storage tanks and the non-affected underground tanks are not located within the populated area of the city, and that their exclusion from the ordinances is, therefore, reasonable and not discriminatory. With regard to public safety, the City contends

---

[1]The petitioner has not directly put in issue the propriety of the city council's action in enacting the ordinances as emergency measures. Cf. Ames v. City of North Las Vegas, 83 Nev. 510, 435 P.2d 202 (1967); Penrose v. Whitacre, 61 Nev. 440, 132 P.2d 609 (1942); Carville v. McBride, 45 Nev. 305, 202 P. 802 (1922); Chartz v. Carson City, 39 Nev. 285, 156 P. 925 (1916).

that large tank trucks moving along the main street where most of the service stations are located pose a greater traffic hazard than do the more maneuverable smaller trucks. Moreover, the City emphasizes the limited capability of its volunteer fire department to cope with the possibility of a large conflagration should total spillage of 9500 gallons occur from a large tank truck during the unloading process.

The City's argument has surface appeal, but that is all. Once it is shown that a single delivery of a given amount of gas from a large tank truck is safer than multiple deliveries from a truck of lesser capacity, the populated area of the city is best protected by requiring single deliveries and refills, rather than by prohibiting them. The ordinances may not be justified as traffic safety measures since they were not enacted for that purpose. In any event, it is questionable whether their enforcement would lessen the risk of accident since multiple deliveries increase the volume of traffic. Finally, the City's effort, through an expert witness, to hypothetically create the specter of a large conflagration from the possibility of a total spillage of 9500 gallons occurring from a large tank truck during delivery to a storage tank must be ignored since the record contains no information that such a total spillage has ever happened in Wells or elsewhere. Cf. Beasley v. State, 81 Nev. 431, 404 P.2d 911 (1965).

2. Although the case of Leathers v. City of Burns, 444 P.2d 1010 (Ore. 1968), may be read to support the City's position, the great majority of cases condemn similar prohibitory ordinances.

In this case, as in State v. Redman Petroleum Corp., 77 Nev. 163, 360 P.2d 842 (1961), we find no good reason to depart from the majority view. Those cases declare that the prohibitions of the ordinances similar to those enacted by the City of Wells do not, in fact, bear a reasonable relationship to the declared objective of public safety and, therefore, deny due process. Humble Oil and Refining Co. v. City of Georgetown, 428 S.W.2d 405 (Civ.App.Tex. 1968); City of Colorado Springs v. Grueskin, 422 P.2d 384 (Colo. 1967); Standard Oil Company v. City of Gadsden, 263 F.Supp. 502 (U.S.D.Ct.Ala. 1967); Clark Oil & Refining Corp. v. City of Tomah, 141 N.W.2d 299 (Wis. 1966); McCoy v. Town of York, 8 S.E.2d 905 (S.C. 1940). The record before us compels the same conclusion.

Moreover, the Emergency Ordinances are invidiously discriminatory in application since they do not apply to above-ground storage tanks, nor to all underground storage tanks within the City, thereby violating the command of equal protection of the laws. Humble Oil and Refining Co. v. City of Georgetown, supra; Ex Parte Rodgers, 371 S.W.2d 570 (Ct.Cr.App.Tex. 1963); Standard Oil Co. v. City of Charlottesville, 42 F.2d 88 (4 Cir. 1930).

We hold that Emergency Ordinances 62 and 81 of the City of Wells are unconstitutional. The petition of Al Martin for a writ of habeas corpus is granted and he is ordered released from restraint forthwith.

ZENOFF, C. J., and BATJER, MOWBRAY, and GUNDERSON, JJ., concur.